HOWARD, Circuit Judge.
A jury convicted George Upton of conspiracy to commit money laundering. In this appeal, he argues that, by the time of his indictment, the statute of limitations period had run on all of his conduct except for the filing of a false tax return and the failure to file a tax return. Upton asserts that, under governing Supreme Court precedent cabining the government’s ability to charge continuing conspiracies based on subsequent acts of cover-up, the two tax offenses were not part of the conspiracy. From this premise he contends both that he was entitled to a jury instruction on the *6 statute of limitations and that the evidence was insufficient to convict him of conspiracy to launder money within the applicable limitations period. He also claims that the district court erred in admitting a hearsay statement as an excited utterance. We affirm.[1]
I.
A. Background Facts
For purposes of assessing the sufficiency claim, we recite the facts in the light most favorable to the verdict. See United States v. Boulanger, 444 F.3d 76, 89 (1st Cir.2006).
Upton owned Look Motors, Inc., a used car lot in Hyannis, Massachusetts that sold automobiles and offered financing to customers who could not afford to make large down payments. In connection with this enterprise, he had a business relationship with Steven Queen, a lender.
On July 9,1997, Queen traveled to Florida and removed a large amount of cash from his parents’ safe deposit box. Queen had told several people of his plans prior to making this trip, claiming that the money was his inheritance. Upton had heard about Queen’s trip and its purpose.
Upon returning from Florida on the evening of July 12, 1997, Queen left a suitcase containing $900,000 in cash in the trunk of a car that was parked in the Look Motors parking lot and went to dinner. Upton’s daughter saw Queen place the suitcase in the trunk of the car. She told Upton and his girlfriend of twenty years, Lynn Alber-ico, about the suitcase. While Queen was at dinner, Upton and Alberico removed the suitcase from the car. When Queen returned to Look Motors and discovered that the suitcase was missing, he accused Upton of stealing the money. Upton denied the accusation and told Queen to leave. Distraught, Queen went to the apartment of a friend and told her that the money he had taken from his parents was gone.
Queen accused Upton of stealing the money on several occasions, in public confrontations. Upton did not admit to Queen that he had taken the money. During the fall of 1997, however, Upton did admit to an acquaintance that he had stolen a suitcase with more than $900,000 in cash from Queen. In 1999, Alberico made the same admission to her best friend.
On August 19, 1997, a month after the theft, Upton signed a purchase and sale agreement to buy the property located at 89 Iyanough Road in Hyannis, Massachusetts for $120,000. He made a $12,000 down payment by check; that check was returned for insufficient funds, and Upton replaced it with $12,000 in cash. Upton paid the $108,000 balance of the purchase price with thirteen cashier’s checks.
The cashier’s checks had been acquired in several stages, over the span of three days. Upton’s brother, two friends, and a Look Motors employee assisted Upton and Alberico. Upton provided cash to these four people. Then, each person deposited the cash into his or her personal bank account to purchase one or more cashier’s checks. Most of the deposits and checks were for sums less than $10,000 and involved visits to multiple bank branches or multiple visits to the same branch, in order to avoid federal reporting requirements.[2] *7 The checks variously were made out to Upton or to Alberico.
Alberico took title to the property in the name of “AU Trust.” That trust, created on the day of the closing, August 29, 1997, bears Alberico’s and Upton’s initials. Also on the day of the closing, Alberico granted a sham mortgage on the property to “Bos-tonians Trust of Florida,” which did not then even exist. The property was then rented out for $1,000 per month.
The 89 Iyanough Road property was sold on January 5, 1999, for $202,000. On January 6, the real estate attorney wrote separate checks to Upton and Alberico for $39,850 each, and, less than a week later, purchased bank checks made out to Upton and Alberico for $52,948.21 each. Bank records indicate that these checks were deposited into the accounts of Look Motors and Alberico, respectively, in January 1999.
Upton eventually filed his 1997 federal income tax return in July 2000, reporting a total income of $14,165. At the same time, he also filed returns for 1994, 1995, and 1996. All of his returns were prepared by his accountant, based on information provided by Upton. The 1997 return was false in that it did not disclose any portion of the $900,000 stolen from Queen, nor did it disclose any portion of the rental income from 89 Iyanough Road for the partial year 1997. Alberico’s tax return for 1997, filed in August 1998, also neglected to report any portion of the stolen money or the rental income. Upton did not file a return for 1998. Alberico filed a false return for 1998 in October 1999, again failing to report rental income. Neither Upton nor Alberico filed a tax return for 1999, the year in which each earned a substantial capital gain from the sale of the property.
B. Procedural History
In August 2002, a grand jury indicted Upton and Alberico for money laundering and for structuring financial transactions to evade reporting requirements, as well as for conspiracy to engage in such structuring. On May 12, 2004, a superseding indictment added counts of conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B), (h) and 1957(a); filing a materially false income tax return for the'year 1997, in violation of 26 U.S.C. § 7206(1); and failing to file an income tax return for the year 1999, in violation of 26 U.S.C. § 7203.
The general five-year statute of limitations, 18 U.S.C. § 3282, applies to prosecutions for violations of the money laundering and structuring statutes. For reasons not material to this appeal, the filing of the superseding indictment established May 12, 2004 as the relevant date for statute of limitations purposes. Prosecution for alleged crimes committed prior to May 12, 1999 was thus barred by the statute of limitations. Accordingly, the district court dismissed the counts carried over from the original indictment alleging money laundering, structuring and conspiracy to engage in structuring. Upton, 339 F.Supp.2d at 196. Upton went to trial on the remaining charges of conspiracy to commit money laundering and the two tax violations.[3]
During the charge conference, Upton did not request a jury instruction on a statute of limitations defense to the conspiracy count. The next day, however, at the completion of the government’s case in chief, he did request such an instruction. *8 The trial judge denied this request on the basis that Upton had waived the request by failing to raise it at the charge conference. At the completion of the government’s case, Upton moved unsuccessfully for judgment of acquittal on the basis that the money laundering conspiracy charge was time-barred. After the jury had been instructed at the close of the evidence, Upton objected to the denial of his request for a statute of limitations instruction. The court again ruled that Upton had waived his right to a jury instruction on the statute of limitations because he did not raise it at the charge conference.
The jury found Upton guilty on each of the three counts: conspiracy to commit money laundering, filing a false tax return, and failure to file a tax return. Following the verdict, the district court denied Upton’s renewed motion for judgment of acquittal, United States v. Upton, 352 F.Supp.2d 92, 100 (D.Mass.2005), and sentenced him to 162 months’ imprisonment.
II.
Upton appeals only his conviction for conspiracy to commit money laundering. He does not challenge his tax convictions. As to the conspiracy conviction, he claims that the district court erred in not instructing the jury on the statute of limitations; erred in denying his motion for acquittal on statute of limitations grounds; and abused its discretion in admitting a statement as an excited utterance.
A. Jury Instruction on Statute of Limitations
Upton contends that the district court erred by failing to instruct the jury on the statute of limitations applicable to the money laundering conspiracy. He argues that he has preserved his objection to the court’s failure to so instruct, and therefore that harmless error is the appropriate standard of review. While he acknowledges that he failed to request a written instruction at the charge conference, Upton presses the fact that he raised his objection after the charge conference but before the jury was instructed, and again after the instructions were delivered to the jury. Beyond this, he asserts that even if he has not preserved his objection, the court’s failure to give the instruction was plainly erroneous. See United States v. Thurston, 358 F.3d 51 (1st Cir.2004), vacated on other grounds.
The appellant is not entitled to relief on this ground. First, the claim of error is unpreserved. The requirements for requesting a jury instruction are clear. Fed. R.Crim.P. 30(a) provides as follows:
Any party may request in writing that the court instruct the jury on the law as specified in the request. The request must be made at the close of evidence or at any time that the court reasonably sets.
(emphasis added). Upton concedes that he did not submit in writing a request for an instruction on the statute of limitations; indeed, he acknowledges that he withheld the request for a jury instruction at the charge conference as part of his trial strategy. As he did not meet the requirements for requesting a jury instruction, his later objections to the jury instructions were deemed waived by the trial judge.
That brings us to the question of how to treat the unpreserved jury instruction issue. In United States v. Muñoz-Franco, 487 F.3d 25, 54 (1st Cir.2007), we held that the failure to request a jury instruction constitutes waiver. The defendants in Muñoz-Franco claimed that the district court erred in not instructing the jury on the applicable statute of limitations, but they had not raised that issue at any time prior to or during trial, including in their post-trial Rule 29(a) motion. We held that *9 their claim was waived and thus not reviewable on appeal.
Pointing to Thurston, Upton argues that plain error review is appropriate in this case. 358 F.3d at 63. It is not necessary, however, to resolve any potential conflict between Muñoz-Franco and Thurston here. Waiver is the “intentional relinquishment or abandonment of a known right.” United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citation omitted) (emphasis added). The right to a jury instruction can be waived by not requesting the instruction, or not objecting at the proper time. Fed. R.Crim.P. 30(a), (d). Upton deliberately chose not to request a statute of limitations jury instruction at the charge conference as a matter of trial strategy.[4] The informed decision to decline to exercise the right to request a specific jury instruction is a straightforward example of an “intentional relinquishment” subject to waiver.
Even were we to consider this an instance of forfeiture and review the failure to instruct the jury on the statute of limitations for plain error, we would conclude that there was no plain error. Under the plain error standard, Upton must show that “the trial court committed an error, that the error was ‘plain,’ and that the error affected the substantial rights of the appellant.” United States v. Colon-Nales, 464 F.3d 21, 25 (1st Cir.2006) (citing Olano, 507 U.S. at 732, 113 S.Ct. 1770). Further, error is to be corrected only if it “seriously affects the fairness, integrity or public reputation of judicial proceedings.” Olano, 507 U.S. at 736, 113 S.Ct. 1770 (internal citation and quotation marks omitted).
The trial court did not commit plain error in declining to instruct the jury on the statute of limitations. Rule 30(a) is clear, and Upton failed to meet its strictures. The district judge acted within her discretion to deny Upton’s requested instruction because the request was untimely.
B. Motion for Acquittal on Statute of Limitations
Presented as a challenge to the sufficiency of the evidence, Upton argues that the district court should have granted his motion for acquittal on the conspiracy count because the statute of limitations bars his conviction. The essence of this sufficiency claim is that there was no evidence that the conspiracy continued to a time that was within five years of the May 12, 2004 superseding indictment. Upton argues that the money laundering objective of the conspiracy was achieved no later than when the conspirators sold the Iyanough Road property in January 1999. His failure to file a return for 1999 and his July 2000 filing of a false tax return for 1997 were, he says, at most unilateral acts intended to cover up the conspiracy after its termination. Relying on Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), Upton argues that the tax violations must be viewed as no more *10 than attempts at covering up a completed conspiracy. As such, under Grünewald they cannot constitute acts in furtherance of the conspiracy.
The government counters that Grüne-wald does not bar this prosecution. Rather, because the indictment charged a conspiracy the main objective of which was concealment, Grünewald’s limiting principle has no applicability to this case.
1.
We review de novo the denial of a motion for judgment of acquittal based on the insufficiency of the evidence. United States v. Hatch, 434 F.3d 1, 4 (1st Cir.2006). A motion for judgment of acquittal is only granted if “the evidence and all reasonable inferences to be drawn from the evidence, both taken in the light most favorable to the government, are insufficient for a rational factfinder to conclude that the prosecution has proven, beyond a reasonable doubt, each of the elements of the offense.” United States v. Pimental, 380 F.3d 575, 583 (1st Cir.2004).
To determine whether Upton’s motion for acquittal based on the statute of limitations should have been granted, we look backward from the date of the superseding indictment and assess whether the evidence, taken in the light most hospitable to the verdict, was such that the jury could reasonably have concluded that the conspiracy did not end until May 12, 1999 or later. See United States v. Walsh, 928 F.2d 7, 11-12 (1st Cir.1991). The question boils down to whether the jury could have supportably found that either or both of the tax offenses that Upton committed in 2000 were part of the conspiracy, and the wrinkle is Upton’s assertion that Grüne-wald requires us to view the tax violations as acts of cover-up beyond the scope of the conspiracy.
A conspiracy endures as long as the co-conspirators endeavor to attain the “central criminal purposes” of the conspiracy. Grunewald, 353 U.S. at 401, 77 S.Ct. 963. In this case, the indictment charged that Upton and Alberico conspired to violate 18 U.S.C. §§ 1956(a)(1)(B) and 1957(a). Section 1956(a)(1)(B) prohibits engaging in financial transactions involving the proceeds of unlawful activities:
knowing that the transaction is designed in whole or in part—
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity ...
18 U.S.C. § 1956(a)(1)(B) (emphasis supplied). The focus of the prohibition is thus trained on the design to conceal or disguise. The concealment feature distinguishes § 1956(a)(1)(B) from § 1957(a). Section 1957(a) prohibits monetary transactions in criminally derived property, but does not contain an element of concealment or disguise.
The Supreme Court has recently examined language in § 1956(a)(2) that is identical to the language of the section at issue in this case, § 1956(a)(l)(B)(i). In Cuellar, — U.S. —, 128 S.Ct. 1994, 170 L.Ed.2d 942, the Court considered whether certain conduct violated § 1956(a)(2)’s proscription against “transportation” of proceeds with knowledge that the transportation was designed to conceal or disguise the nature, location, source, ownership or control of the proceeds. The Court emphasized that in the phrase “designed ... to conceal or disguise,” “ ‘design’ means purpose or plan”; i.e., the intended aim of the transportation. 128 S.Ct. at 2003. As the pertinent language of § 1956(a)(1)(B) is identical to that of § 1956(a)(2)(B), we conclude that Congress’s use of “designed ... to conceal or disguise” in (a)(1)(B) likewise requires the *11 government to prove that there was a purpose or plan to conceal or disguise. See Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 562, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (“The normal rule of statutory construction [is] that identical words used in different parts of the same Act are intended to have the same meaning.”); see also Finnegan v. Leu, 456 U.S. 431, 438 n. 9, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982) (noting that “if Congress had intended identical language to have substantially different meanings in different sections of the same enactment it would have manifested its intention in some concrete fashion.”).
The conspiracy count in the indictment explicitly invoked the concealment money laundering prohibition of 18 U.S.C. §§ 1956(a)(1)(B), charging Upton with the intent to conceal material characteristics of the stolen money. The indictment alleged, as the “manner and means” of carrying out the conspiracy, that the defendants used the stolen monies to make the multi-lay-ered purchase of 89 Iyanough Road in August of 1997; that Upton commingled additional theft proceeds with business receipts of Look Motors on more than twenty occasions during the remainder of 1997; that Alberico filed a false tax return for 1997 in 1998 that did not disclose the theft income or her rental income from the Iya-nough road property; and that:
“It was part of the conspiracy that [defendants] attempted to conceal or disguise the nature, location, source, ownership, or control of the illegal cash proceeds by failing to file income tax returns, or declare a capital gain from the sale of the commercial property, for the tax year 1999 [and Upton attempted to conceal or disguise] by filing a materially false federal income tax return ... that failed to declare the receipt of the illegal income or the rental income from the property in 1997.”
The indictment thus put Upton on notice, at a minimum, that his concealment of the capital gain from the sale of 89 Iya-nough Road was part and parcel of the alleged means of carrying out the charged conspiracy.[5] To sustain its burden of proof, the government had to establish that Upton conspired to engage in transactions with the intended aim of concealing or disguising certain attributes of the funds involved. And to avoid the statute of limitations bar, it also had to prove that one of the tax offenses was in furtherance of the central objective of the conspiracy.
Determining the contours of the conspiracy ordinarily is a factual matter entrusted largely to the jury. United States v. Moran, 984 F.2d 1299, 1303 (1st Cir.1993). Consistent with the allegations in the indictment, the government introduced evidence that Upton and Alberico purchased the 89 Iyanough Road property in August 1997 and sold it in January 1999. The pair converted cash into cashier’s cheeks to finance the initial purchase of the property, set up the sham mortgage, and took title in the name of “AU Trust.” Upton commingled additional theft proceeds with business income. Alberico filed a false 1997 tax return, omitting the theft proceeds and rental income. Neither Upton nor Alberico filed tax returns for 1999-the year in which they were required to report a capital gain on the sale.
From this evidence the jury reasonably could have found that Upton’s failure to *12 file the 1999 return was in furtherance of the central objective of the conspiracy. Specifically, the jury supportably could have concluded that the failure to file his 1999 return in the ordinary course facilitated the concealment aim of the money laundering transactions. That act of omission may have had special significance to the jury, because in his 1999 return Upton was required to disclose not only any rental receipts but also the capital gain he realized on the sale of the property. The jury may have also found it significant that Alberico, too, did not file a return for 1999, contrary to her practice in previous years. The capital gains disclosures they were required to make easily could have unraveled the entire money-laundering scheme, not only subjecting them to prosecution, but also resulting in the forfeiture of the proceeds. See 18 U.S.C. § 981(a). Avoiding such an outcome, whereby their use of the proceeds would be thwarted, was a primary goal of the concealment money laundering conspiracy, or so the jury could have found.[6]
2.
In the face of this evidence, Upton argues that Grünewald imposes a limitation on the ability of subsequent acts of concealment to extend the life of a conspiracy.[7] At bottom, as we have noted, the argument is that acts that constitute an attempt to cover up a completed crime do not extend the duration of the conspiracy. See Grunewald, 353 U.S. at 401, 77 S.Ct. 963 (it is not enough that the defendants “took care to cover up their crime in order to escape detection and punishment”). According to Upton, his failure to file a 1999 tax return and his July 2000 filing of a false 1997 tax return were, at most, attempts to cover up completed financial transactions, namely, the buying and selling of the Iyanough Road property in August 1997 and January 1999. Thus, he maintains, under Grünewald the acts of concealment represented by the two tax *13 offenses could not extend the life of the conspiracy. In support of this argument, Upton cites United States v. LaSpina, 299 F.3d 165, 176 (2d Cir.2002), for the proposition that a conspiracy with an economic transaction as its objective lasts only until the “anticipated economic benefits” of that transaction are received. Id.
If covering up a completed conspiracy to violate 18 U.S.C. § 1957(a), by engaging in monetary transactions in criminally derived property, were all that the two tax offenses accomplished, the argument might have merit. Here, however, as we have noted, Upton was also charged with conspiring to violate § 1956(a)(1)(B) by engaging in financial transactions designed to conceal or disguise certain characteristics of the proceeds of unlawful activity. The objective of the conspiracy was more than the specific monetary transactions of buying and selling 89 Iyanough Road. The objective was to engage in concealment money laundering in order to obscure the illicit source of the funds and the conspirators’ continued control of the proceeds. Accordingly, Upton’s argument fails to gain traction.[8]
To be sure, in some cases the crime of concealment money laundering may be completed at the time the transaction itself is consummated. In this case, for example, there was a wealth of evidence that the purchase of the Iyanough Road property in 1997 constituted concealment money laundering. But that the evidence might have shown that the 1997 purchase of property constituted concealment money laundering does not mean that the conspiracy to commit concealment money laundering ceased at that time or, for that matter, with the sale of the property in 1999.[9]
Where, as we have established is the case here, the substantive crime that is the object of the conspiracy has the intent to conceal as an element, the success of the conspiracy itself may depend on further concealment. Consequently, additional acts of concealment that facilitate the central aim of the conspiracy are in furtherance of the conspiracy. See, e.g., United States v. Goldberg, 105 F.3d 770, 774 (1st Cir.1997) (acts of tax evasion were “integral and self-evident part of’ fraud conspiracy charged under 18 U.S.C. § 371); United States v. Mann, 161 F.3d 840, 859 (5th Cir.1998) (acts designed to frustrate regulatory oversight were “central” to conspiracy involving fraud within savings and loan institution); United States v. Esacove, 943 F.2d 3, 5 (5th Cir.1991) (acts designed to protect money laundering conspiracy against government investigation held “necessary” part of conspiracy). And, as noted above, the jury was entitled to infer that the conspirators’ parallel failures to file tax returns for 1999 were part of an ongoing plan to engage in concealment money laundering, rather than merely be *14 ing later attempts to cover up a completed crime. See United States v. Dazey, 403 F.3d 1147, 1159 (10th Cir.2005) (“[T]he jury may infer conspiracy from the defendants’ conduct and other circumstantial evidence indicating coordination and concert of action.”).
3.
Upton presents another argument. Even assuming that he engaged in acts of concealment that could be considered to be in furtherance of the main objectives of the conspiracy, no conspiracy could have existed in this case because he and Alberico never expressly agreed to engage in acts of concealment. The Court’s decision in Grünewald, he posits, requires that the government present proof of defendant’s express agreement to conceal. See United States v. Twitty, 72 F.3d 228, 234 (1st Cir.1995). The government, Upton contends, failed to present such evidence. In fact, Upton argues that the record evidence actually supports his contention that no such express agreement existed and that, as a result, any acts of concealment were undertaken unilaterally. This is because the record indicates that, by the summer of 1999, he and Alberico were estranged.
Upton’s argument misses the point. In Grünewald, the Court drew a distinction between “acts of concealment done in furtherance of the main objectives of the conspiracy,” and “acts of concealment done after these central objectives have been attained for the purposes of covering up after the crime.” 353 U.S. at 405, 77 S.Ct. 963. Where the latter is involved, the government must present some proof of an express original agreement to engage in the acts of concealment. See Twitty, 72 F.3d at 234. However, nothing in the case law imposes a requirement that conspirators expressly agree to engage in acts of concealment where those acts are done in furtherance of the main objectives of the conspiracy.[10] Rather, the acts of concealment committed by one co-conspirator need only have been “foreseeable” to the other co-conspirator. See United States v. Hansen, 434 F.3d 92, 103 (1st Cir.2006); United States v. Pinillos-Prieto, 419 F.3d 61, 69 (1st Cir.2005).
Here, as established above, a reasonable jury could conclude that the acts of concealment in this case, specifically the failure of Upton and Alberico to file 1999 tax returns, were done in furtherance of the main objectives of the conspiracy. And, moreover, these acts would have plainly been foreseeable to both conspirators. Not filing returns was an “integral and self-evident part of’ the conspiracy — had either Upton or Alberico not hidden the proceeds of the house sale, this would have defeated the primary purpose of the conspiracy. Goldberg, 105 F.3d at 774.[11]
*15 4.
In his final attempt at excluding the tax offenses from consideration, Upton suggests that his estrangement from Al-berico in the summer of 1999, alluded to above, amounted to a withdrawal from the conspiracy. This argument is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (“[IJssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.”). In any event, the standard for recognizing a conspirator’s withdrawal from a conspiracy is exacting. Even were this argument not waived, Upton cannot demonstrate his withdrawal from the conspiracy. See United States v. Dunn, 758 F.2d 30, 38 (1st Cir.1985) (“[A] conspirator must act affirmatively to either defeat or disavow the purpose of the conspiracy”; mere disagreement with co-conspirators is insufficient to constitute withdrawal.).[12]
C. Hearsay Evidence
Upton argues that the district court erred in admitting as an excited utterance Queen’s hearsay statement to his friend Janet Hoell that “the money was gone” on the night of the theft of the suitcase. Fed.R.Evid. 803(2) creates an exception to the rule against hearsay for “[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.” Upton contends that because six hours elapsed between the startling event — the disappearance of the suitcase full of money — and Queen’s statement to Hoell, the statement could not have been made while Queen was “under the stress of excitement” of the loss of the money. Fed.R.Evid. 803(2).
We review the admission of evidence after an objection for an abuse of discretion. See United States v. Garcia, 452 F.3d 36, 38 (1st Cir.2006). We will only vacate a jury verdict if an improperly admitted statement was not harmless— that is, if its admission “ ‘likely affected the outcome of trial.’ ” United States v. Castellini, 392 F.3d 35, 52 (1st Cir.2004) (quoting United States v. Torres-Galindo, 206 F.3d 136, 141 (1st Cir.2000)).
If the admission of the statement was error at all, which we needn’t decide, it was harmless for two reasons. First, the statement itself likely did little to influence the jury. Conspiracy to commit concealment money laundering involves an agreement to conceal the nature of proceeds that were unlawfully obtained. Here, in order to prove the element that the proceeds had been illegally obtained, the government had to show that Upton stole the money that he subsequently laundered. Queen’s statement does not demonstrate that the money was even stolen, much less that Upton was the one who stole it. While Queen’s statement does provide support for the idea that the money disap *16 peared from the trunk of the car during a specific time frame, it does not implicate Upton.
Second, the government presented plenty of evidence that Upton did in fact steal the money. Upton’s friend Phidias Dantos testified that Queen accused Upton of stealing the money shortly after the theft occurred. More significantly, Colleen Otto testified that Alberico told her that Alberi-co and Upton had taken the money, and Edwin Jones testified that Upton revealed to him that he had stolen the money. Look Motors’s bookkeeper, Lucy Webb, testified that Upton declined to tell her where he got the money to purchase 89 Iyanough Road, saying that he wanted to “maintain her innocence.” And the additional evidence of Upton’s money laundering activities provided strong support for the inference that he and Alberico had obtained a large sum of money around the time the suitcase was stolen from Queen. If it was anything, Queen’s statement was merely icing on the cake.
Upton nevertheless contends that the admission of Queen’s statement cannot constitute harmless error. He argues that Queen’s statement bolstered the testimony of Otto and Jones, witnesses who he says were in need of bolstering because of their dubious credibility.[13] There are two problems with this argument. First, the bolstering complaint applies only to Otto and Jones. As we have explained, the testimony of Otto and Jones was not the only evidence indicating that Upton stole the money from Queen. Second, in addition to credibility being a matter for the jury to determine, it is doubtful that the credibility of Otto and Jones needed bolstering from Queen’s statement in any event. Their testimony was supported by other evidence. Otto’s testimony that Alberico admitted that she and Upton took the suitcase of money to a hotel was supported by hotel records introduced at trial revealing that Upton rented a hotel room for two people on the night Queen returned from Florida. Otto’s further testimony that Al-berico said she had spent part of her share of the money during a trip to Italy was corroborated by airline and credit card records showing that Alberico was in Italy during February 1999. Jones testified that in 1997 Upton gave him cash from a “shoebox full of money” and that the money “looked old” and was dated from the 1950s; this description is consistent with the proposition that the money was earned by Queen’s father throughout his life and subsequently stored in a safe deposit box.
In short, Queen’s statement to Hoell is cumulative of other evidence in the record. Regardless of whether admitting the statement as an excited utterance may have been error, any such error was harmless.
For the reasons expressed above, we uphold Upton’s conviction.

Affirmed.

. After oral argument in this case, the Supreme Court decided. Cuellar v. United States, - U.S. -, 128 S.Ct. 1994, 170 L.Ed.2d 942 (2008). The case is pertinent to the limitations issue raised and required further consideration.

. Pursuant to 31 U.S.C. § 5313(a) and 31 C.F.R. § 103.22, domestic financial institutions are required to report currency transactions involving more than $10,000 to the Internal Revenue Service.

. Upton was tried in October 2004. Alberi-co’s motion to sever had been granted previously; she was tried separately in July 2005.

. Upton points out that a defendant may face a difficult decision when a charge conference is held before the close of the government's case: raising a defense at that point might alert the government to a weakness in its case and encourage the government to seek additional evidence. Nevertheless, the district court is vested with the authority to manage trials, United States v. Saccoccia, 58 F.3d 754, 770 (1st Cir.1995), including setting a time for the charge conference that parties must adhere to or face the consequences. Here, the charge conference was the day before the government closed the evidence in its case. The timing of the conference was entirely reasonable, and we need not explore application of the rule to situations presenting an extreme gap in timing between the conference and the close of the evidence.

. The indictment did not expressly allege the sale of the Iyanough Road property in January 1999 as a money laundering transaction, but as we have noted, the indictment did allege that the concealment of capital gain on the sale was part of the conspiracy. In any event, Upton does not make any claim of variance and does not contest that the sale was part of the conspiratorial object.

. The government says that Upton’s filing in 2000 of a false 1997 return was also an act in furtherance of the conspiracy. It may have been, although the act occurred more than two years after Upton would have been expected to file a return, and almost two years after his coconspirator Alberico similarly filed a false return. We need not definitively resolve whether that Upton’s false filing was in furtherance of the conspiracy. The evidence of the conspirators’ parallel failures to file 1999 tax returns was sufficient for the jury to conclude that the conspiracy lasted at least until May 12, 1999. But that does not by any stretch render Upton's 2000 filing irrelevant. At a minimum, the fact of the false filing was admissible to show, and was strong evidence of, Upton’s knowledge that the 1997 purchase was designed to conceal characteristics of the unlawful proceeds. In addition, coming as it did in the same time frame as Upton's failure to file a tax return for 1999, his guilty knowledge associated with the June 2000 false filing solidifies the inference that the reason for the failure to file was in fact to prevent discovery of the money laundering conspiracy. The 1997 returns filed by both conspirators were false in that they did not disclose the receipt of the stolen funds. Pointedly, they also failed to disclose the rental income from the Iyanough Road property, further cementing the inference that ownership of that property was part of a design to disguise or conceal.

. In Grunewald, decided under the general conspiracy statute, 18 U.S.C. § 371, the defendants had been charged with conspiracy in connection with a scheme to obtain "no prosecution” rulings by bribing an IRS official in two discrete tax cases. Based primarily on a concern that the statute of limitations otherwise would be open-ended, the Court concluded that later acts of cover-up did not extend the duration of the conspiracy. Subsequently, in Forman v. United States, the Court held a conspiracy to have continued into the relevant limitations period, where the indictment alleged that the conspiracy included the acts of concealment, and where the concealment was necessary for the successful completion of the scheme. 361 U.S. 416, 423-24, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960).

. Upton's citation to LaSpina is inapposite. The conspiracy in LaSpina differed materially from the conspiracy in this case. LaSpina involved a conspiracy whose purpose was to engage in monetary transactions in criminally derived property, in violation of 18 U.S.C. § 1957(a). The reasoning in LaSpina thus applies to conspiracies without an element of concealment.

. In Grünewald, the court observed that subsequent acts of concealment may well facilitate the success of the substantive crime and thus be in furtherance of the conspiracy, as when a car thief repaints the stolen vehicle. 353 U.S. at 405, 77 S.Ct. 963. The purpose of concealment money laundering is to make proceeds appear legitimate, especially to the government. Preventing the authorities from discovering the illicit nature of the proceeds, by concealing the existence or financial impact of the money laundering transactions, is as much a part of the ongoing conspiracy to launder money as repainting the car is a part of a theft conspiracy.

. In fact, cases like Mann, 161 F.3d at 859 and United States v. Davis, 623 F.2d 188, 192 (1st Cir.1980) indicate that no such requirement exists.

. Although it is unnecessary to our analysis, we note further that a reasonable jury could have concluded that Upton and Alberico had expressly agreed to engage in acts of concealment. Upton and Alberico acted in tandem when they both failed to file returns in 1999. This concerted activity is circumstantial evidence that an express agreement to conceal was in place.
Of course, Upton and Alberico did not act in complete concert at all times. For example, in 1998 Alberico filed a false return for 1997 omitting the stolen Queen money, whereas Upton waited until 2000 to file a false return for 1997. But that other evidence conceivably supports the absence of an express agreement to conceal is not dispositive in this sufficiency of the evidence case. See United States v. Ortiz, 447 F.3d 28, 34 (1st Cir.2006) ("[C]ompeting inferences are not enough to disturb a jury’s verdict”).

. Upton does present an additional argument that merits only summary treatment. He contends that, for statute of limitation purposes, the indictment in this case barred consideration of his tax crimes because it failed to: (1) allege that he and Alberico agreed to commit those tax crimes and (2) charge him with conspiring to commit money laundering with the intent to evade taxes or file a false return in violation of 18 U.S.C. § 1956(a)(l)(A)(ii). “[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.” United States v. Cianci, 378 F.3d 71, 81 (1st Cir.2004) (citation and internal quotations omitted). A review of the indictment in this case makes plain that the indictment's language was sufficient to put Upton on notice of the conspiracy charge against him.

. Upton challenges Jones's credibility in two aspects: Jones was serving time on dr.ug charges and testified in return for a reduction in his sentence; and, Jones may have been seeking revenge against Upton because Upton tipped off the police to Jones's drug dealing activities several years ago. Upton also challenges Alberico's comments to Otto as potentially motivated by a desire to incriminate Upton following their breakup.