932 So.2d 571 (2006)
WESTWIND LIMOUSINE, INC., Appellant,
v.
Nathan SHORTER and Floralba Shorter, et al., Appellee.
No. 5D05-3810.
District Court of Appeal of Florida, Fifth District.
June 30, 2006.
*572 Betsy E. Gallagher and Michael C. Clarke of Law Office of Kubicki Draper, Tampa, for Appellant.
Melvin B. Wright of Colling, Gilbert & Wright, P.A., Maitland, for Appellee.
LAWSON, J.
Westwind Limousine, Inc., ("Westwind"), timely appeals from a non-final order denying its motion to dismiss for lack of personal jurisdiction. Reviewing this matter de novo,[1] we find that asserting personal jurisdiction over Westwind in a Florida state court would violate the Due Process Clause of the United States Constitution,[2] and reverse.
A plaintiff has the burden of proving its right to proceed under Florida's long-arm statute[3] against any out-of-state defendant. See Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989). This burden is initially met by pleading at least one jurisdictional criteria set forth in the long arm statute. Id. at 502. However, if a defendant refutes the jurisdictional allegations of plaintiff's complaint by affidavit, the plaintiff must then prove its claim of jurisdiction with evidence. E.g., Maschinenfabrik Seydelmann v. Altman, 468 So.2d 286, 288 (Fla. 2d DCA 1985) ("The obligation of the plaintiff is not simply to raise a possibility of jurisdiction, but rather to establish jurisdiction with affidavits, testimony or documents.") (quoting Hyco Mfg. Co. v. Rotex Int'l Corp., 355 So.2d 471, 474 (Fla. 3d DCA 1978)). The court must then determine from the evidence submitted whether a statutory basis for jurisdiction has been established. See Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 584 (Fla.2000). If so, the court must also determine whether federal due process requirements have been met, in that the defendant possesses certain minimum contacts with the state and maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Id.; International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); Venetian, 554 So.2d at 502.
Nathan and Floralba Shorter's amended complaint alleges that on November 1, 2004, their daughter, Yadira Rosa Shorter, was fatally injured in an accident involving a defective "Hummer stretch limousine" sold by Westwind to Co-Defendant, H.K. Finance. The Shorter's amended complaint alleges that Westwind "caused injury to persons or property" within Florida by "acts or omissions" occurring outside of the state. The Shorters further tracked the language of Florida's long-arm statute, alleging multiple bases for personal jurisdiction.
*573 The Shorters next allege claims against Westwind for strict liability, breach of implied warranty, and negligence. Each claim arises from Westwind's alleged conversion of a 2004 Hummer motor vehicle into a "stretch limousine." According to the Shorters' amended complaint, the conversion was completed in a manner that created a "blind spot" making the limousine unsafe for operation. Further, the Shorters allege that Westwind impliedly warranted to the public and to the co-defendants that the limousine was fit for its intended purpose. Finally, the Shorters allege that Westwind "knew, or in the exercise of due care should have known" that placing the limousine on the market as converted created an "unreasonable risk of harm" to the decedent.
Westwind responded by filing a motion to dismiss, challenging both the legal sufficiency of the amended complaint's jurisdictional allegations under Florida's long-arm statute and the sufficiency of any "minimum contacts" to Florida under the Due Process Clause. Westwind also filed an affidavit in support of its motion which stated:
AFFIDAVIT OF JAMES BOLINGER
1. I am President of Westwind Limousine, Inc. ("Westwind"), an Ohio corporation, and I am duly authorized to provide the information concerning Westwind in paragraphs 1 through 17 below.
2. Westwind does not have a facility, branch office or other place of business in Florida.
3. Westwind does not have employees or agents in Florida.
4. Westwind's officers or directors are domiciled or reside outside of Florida.
5. Westwind does not hold meetings of its Board of Directors or shareholders in Florida.
6. Westwind does not have, and never has had, any bank accounts or other tangible or real property in Florida.
7. Westwind has not sought to be qualified to do business in Florida and it is not required to pay income or franchise taxes in the state.
8. Westwind does not advertise in Florida, nor is its advertising directed specifically at Florida or contained in publications directed primarily toward Florida residents. Westwind does advertise in two nationally circulated trade publications.
9. Westwind does not have a telephone listing in Florida.
10. Westwind has never attended a tradeshow in Florida.
11. Westwind is an Ohio corporation based in Ohio with operations in Ohio. It has no operations at all in Florida.
12. Westwind sold a 2004 Hummer stretch limousine ("limousine") to HK Finance Corporation ("HK Finance") on March 8, 2004. . . .
13. HK Finance initiated contact with Westwind at Westwind's Ohio offices to inquire about purchasing the limousine.
14. HK Finance flew to Ohio to inspect the limousine prior to its purchase.
15. HK Finance took delivery of the limousine in Ohio.
16. HK Finance paid for the limousine in Ohio.
17. After Westwind delivered the limousine to HK Finance in Ohio, HK Finance drove the limousine out of Ohio.
18. Westwind has had no business dealings with HK Finance other than this March 8, 2004 transaction.
In opposition to Westwind's motion to dismiss, the Shorters' attorney filed his own affidavit. Attached to the affidavit was a printed portion of Westwind's website *574 stating that Westwind has been in the business of manufacturing, selling, and leasing converted limousines since the early 1980s. However, the attached web pages do not contain a single reference to Westwind doing business in Florida, conducting any Florida sales, or soliciting any Florida sales. Additionally, there is no indication that Westwind used its website to directly solicit sales through any active link or web portal that a Florida consumer could access.
In his affidavit, the Shorters' attorney further highlighted that the bill of sale provided by Westwind, in Ohio, specifically notes that the buyer, H.K. Finance, had a Florida address. The bill of sale also reflects that Westwind did not collect Ohio taxes on the transaction.
After considering argument from both parties, the trial court denied Westwind's motion to dismiss, determining that because Westwind sold the vehicle to a Florida corporation, it should have known or foreseen that the buyer would operate the vehicle in Florida. This knowledge (or foresight), it was reasoned, was sufficient to subject Westwind to suit in Florida, under the authority of JCB, Inc. v. Herman, 562 So.2d 754 (Fla. 3d DCA 1990) (finding jurisdiction over an out-of-state defendant based upon the sale of a single piece of machinery to a Florida resident) (citing Yale Indus. Prods., Inc. v. Gulfstream Galvanizing & Finishing, Inc., 481 So.2d 1304, 1307 (Fla. 4th DCA 1986)[4] and A.J. Sackett & Sons Co. v. Frey, 462 So.2d 98 (Fla. 2d DCA 1985)).[5]
While these cases appear to support the trial court's conclusions, we believe that they incorrectly apply federal constitutional law.[6] In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the United States Supreme Court emphasized that "`foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." Rather, the Court explained that:
When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," . . . it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, *575 passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. (citations omitted).
Id. at 297-98, 100 S.Ct. 559 (emphasis added).
Here, the evidence presented by the Shorters shows nothing more than the "isolated occurrence" of a single sale to a Florida corporation. The Shorters presented no facts that demonstrate any effort by Westwind to market its products in Florida.[7] The fact that Westwind may have known or foreseen that H.K. Finance would operate the vehicle in Florida, standing alone, is insufficient to confer personal jurisdiction in a Florida state court under the Due Process Clause.
Therefore, we reverse the trial court's order on Westwind's motion to dismiss, and remand with directions that the motion be granted.
REVERSED and REMANDED.
SAWAYA and ORFINGER, JJ., concur.
NOTES
[1] See Enic, PLC v. F.F. South & Co., Inc., 870 So.2d 888 (Fla. 5th DCA 2004) (a trial court's ruling on a motion to dismiss for lack of personal jurisdiction is subject to de novo review).
[2] U.S. Const. amend. XIV, § 1.
[3] § 48.193, Fla. Stat. (2005).
[4] Yale was expressly disapproved in Aetna Life & Casualty Co. v. Therm-O-Disc, Inc., 511 So.2d 992 (Fla.1987) (finding no basis for jurisdiction under the long-arm statute, and therefore declining to address the Yale court's due process/minimum contacts analysis).
[5] The court in Frey relied upon McGee v. International Life Insurance Co., 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), in which the Supreme Court noted "a trend... toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." However, one year later, the Court clarified that the Due Process Clause still mandated a defined limitation to the assertion of personal jurisdiction over a non-resident defendant. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The Court explained: "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 253, 78 S.Ct. 1228.
[6] We agree with the trial court's conclusion that the Shorters have established a basis for personal jurisdiction under section 48.193(1)(f)2, Florida Statutes. That section provides for personal jurisdiction over a nonresident defendant who manufactures a product (anywhere) that is used in Florida in the ordinary course of commerce and causes injury to persons or property in Florida, arising out of an act or omission outside of the state. Therefore, our analysis focuses solely on federal due process limitations to personal jurisdiction.
[7] We note that "merely post[ing] a passive website" does not constitute either the solicitation of business in Florida or the transaction of business in Florida, for purposes of a jurisdictional due process analysis. Miller v. Berman, 289 F.Supp.2d 1327, 1334-35 (M.D.Fla.2003) (recognizing that a passive website that does little more than make information available to those who are interested in it is not grounds for personal jurisdiction). See generally Kevin M. Fitzmaurice & Renu N. Mody, International Shoe Meets the World Wide Web: Whither Personal Jurisdiction in Florida in the Age of the Internet?, 71 Fla. B.J. 22 (December 1997).