# United States Court of Appeals
## For the First Circuit

No. 16-1680

LISA RICCHIO,

Plaintiff, Appellant,

v.

CLARK MCLEAN, ASHVINKUMAR PATEL, SIMA PATEL,
BIJAL, INC. d/b/a SHANGRI-LA MOTEL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter, Associate Justice,*
and Selya, Circuit Judge.

Felicia H. Ellsworth, with whom Cynthia D. Vreeland, Jason
H. Liss, Lucy Heenan Ewins, and Wilmer Cutler Pickering Hale and
Dorr LLP were on brief, for appellant.
Michael David Resnick, with whom John B. Reilly and John
Reilly & Associates were on brief, for appellees.

April 5, 2017

* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER**, **Associate Justice**.  Lisa Ricchio brought actions for civil liability under the Trafficking Victims Protection Act against four defendants, including Ashvinkumar Patel, Sima Patel, and Bijal, Inc.  As to them, the district court dismissed under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  We now reverse.

For the purposes of this review of the dismissal motion and order, the allegations and inferences favorable to Ricchio may be summarized briefly.  See SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (en banc) (at the 12(b)(6) stage, "we accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader").  At the relevant time, the Shangri-La Motel was owned by the defendant Bijal, Inc., and operated by the Patel defendants, husband and wife, who themselves lived there.  In June 2011, Clark McLean enticed Ricchio to drive from Maine to the Shangri-La in Massachusetts, where he took her captive and held her against her will.  Over the course of several days there, McLean physically and sexually abused Ricchio, repeatedly raping her, starving and drugging her, and leaving her visibly haggard and bruised.  He told her that he was grooming her for service as a prostitute subject to his control.  McLean had prior commercial dealings with the Patels, which the parties wished to reinstate for profit.  McLean and Mr. Patel enthusiastically expressed

- 2 -

this intent by exchanging high-fives in the motel's parking lot while speaking about "getting this thing going again," in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels. Ms. Patel had not only nonchalantly ignored Ricchio's plea for help in escaping from McLean's custody at the motel but, when visiting the rented quarters to demand further payment, had shown indifference to Ricchio's obvious physical deterioration. And in plain daylight view of the front office of the motel, either of the Patels on duty there would have seen McLean grab Ricchio, kick her, and force her back toward the rented quarters when she had tried to escape. In these circumstances, it was a plausible understanding that McLean was forcing sex in the motel room where he held Ricchio hostage, and fairly inferable that the gainful business that Mr. Patel and McLean spoke of had been and would be in supplying sexual gratification. It is likewise inferable that the Patels understood that in receiving money as rent for the quarters where McLean was mistreating Ricchio, they were associating with him in an effort to force Ricchio to serve their business objective.

Under Claims 1, 2, 3, 5, 6, and 7 of the complaint,[1] these allegations and inferences suffice as plausible support

[1] Claim 4 charges a violation by McLean alone. It is now moot, owing to voluntary dismissal of the complaint as against

- 3 -

for pleading statutory violations by the Patel defendants in their own right and as agents for renting out Bijal's motel space, and by Bijal in consequence of the Patels' agency. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (to survive a motion to dismiss, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))); see also Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) ("Applying the plausibility standard is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting Iqbal, 556 U.S. at 679)).

In support of this conclusion, we note the following points of congruence between the extensive allegations just summarized and provisions of the discursive Act. In doing this we do not mean to imply that the complaint does not support claims under other provisions. Our point is merely that it withstands the general dismissal motion.

Claim 1, under 18 U.S.C. §§ 1589 and 1595(a)[2]: The defendants' association with McLean was a "venture," that

---

him, following his conviction and incarceration on state charges.

[2] 18 U.S.C. § 1595(a) is the civil remedy provision of the Trafficking Victims Protection Act:

- 4 -

is, a "group of two or more individuals associated in fact," § 1591(e)(5), in conducting which the Patels (and hence Bijal) knowingly benefited, that is, "receiv[ed something] of value," § 1589(b), through renting space in which McLean obtained, among other things, forced sexual labor or services from Ricchio. <u>United States</u> v. <u>Cook</u>, 782 F.3d 983, 988 (8th Cir. 2015) ("The phrase 'anything of value' [in the Act] is extremely broad."). The Patels acted, at the least, in reckless disregard of the fact that the venture included such conduct on McLean's part. <u>See</u> 18 U.S.C. § 1589(b); <u>United States</u> v. <u>Kaufman</u>, 546 F.3d 1242, 1259-63 (10th Cir. 2008) (holding that "labor or services" in § 1589 is not limited to "work in an economic sense" and extends to forced sexual acts). The defendants' knowing benefit from that conduct entitles Ricchio to damages under the derivative civil liability provision of § 1595(a) in the instance of this claim and by like application under those that follow.

---

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Claim 2, under §§ 1590 and 1595(a): In continuing to rent him the room after McLean's conduct was manifest, the Patels knowingly harbored Ricchio at the Shangri-La Motel for the purpose of McLean's object of obtaining her sexual labor or services.  See § 1590(a); Kaufman, 546 F.3d at 1259-63.

Claim 3, under §§ 1591 and 1595(a): The defendants knowingly benefitted from the venture with McLean, since they knew, or at least recklessly disregarded, the factual prospect that force or threats of force would be used to cause Ricchio to engage in a commercial sex act.  See § 1591(a)(2).

Claim 5, under § 1594(b) and (c), and § 1595(a): The venture constituted a conspiracy to violate §§ 1589, 1590, and 1591 (see Claims 1, 2, and 3), the necessary overt acts including the harboring of Ricchio and the receipt of the benefit noted above.  See United States v. Ngige, 780 F.3d 497, 503 (1st Cir. 2015) (discussing the requirements of a conspiracy generally).

Claim 6, under §§ 1594(a) and 1595(a):  The defendants at the least attempted to violate §§ 1589, 1590, and 1591

(see Claims 1, 2, and 3), the necessary substantial steps including the harboring of Ricchio and the receipt of benefit. See United States v. Turner, 501 F.3d 59, 68 (1st Cir. 2007) ("While 'mere preparation' does not constitute a substantial step [for the purposes of attempt], a defendant 'does not have to get very far along the line toward ultimate commission of the object crime in order to commit the attempt offense.'" (quoting United States v. Doyon, 194 F.3d 207, 211 (1st Cir. 1999))).

Claim 7, under §§ 1593A and 1595(a)(which § 1593A treats as creating an independent violation): The defendants knowingly benefitted (again, by way of payment for the motel room) from participating in the venture as charged in the preceding claims that formed a predicate for civil recovery under § 1595(a). The complaint plausibly supports a claim that they acted with at least reckless disregard of the fact that the venture activity resulted in a "violation" of that section.

We repeat that we do not present this summary as necessarily exhausting every variant of statutory violation and basis for civil liability that could survive the general Rule 12(b)(6) motion. Our purpose here is solely to indicate that the claims

so summarized (but yet to be proven) are supported by factual allegations and reasonable inferences in Ricchio's favor sufficient to pass muster under the plausibility standard.

We conclude by focusing on specific points of disagreement with the views expressed by the district court in the order granting the motion to dismiss and the order denying reconsideration. To begin with, we give attention to the whole body of allegations as circumstantially supplying meaning to particular acts by the Patels that the trial judge found too ambiguous to support the claims when considered in isolation. See Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 88 (1st Cir. 2015) ("The factual allegations [in the complaint] are 'circumstantial,' to be sure, but there is no requirement for direct evidence." (citation omitted)); see also García-Catalán v. United States, 734 F.3d 100, 101, 103 (1st Cir. 2013) (cautioning courts not to apply the plausibility standard "too mechanically" and to read complaints "as a whole"). Most significantly, the district court found it "meaningless" that McLean and Mr. Patel exchanged high-fives in speaking about "getting this thing going again." In isolation this may be so, but the complaint is to be read as a whole, and we read the statement in light of the allegations of the Patels' complaisance in response to the several alleged exhibitions of McLean's coercive and brutal behavior to a physically

deteriorating Ricchio, who pleaded for help.  Not only were McLean's actions different from the expectable behavior of a man who simply wished to overcome a woman's reluctance to engage in sexual activity; they were indications of what he and Mr. Patel had in mind when McLean spoke of "this thing."

Our second major point of disagreement with the district court is its holding that the various statutes under which this action is brought require a showing that the Patels' actions, in conjunction with McLean's, succeeded in actually establishing a going business of supplying third parties with sexual opportunities.  Although § 1589 requires that labor or services be provided or obtained, the other provisions noted here do not.  See § 1590(a) (prohibiting the "knowing[] . . . harbor[ing] . . . [of] any person for labor or services," which is most obviously read as requiring only intent to produce the result described); § 1594(a), (b), and (c) (prohibiting attempt and conspiracy to violate §§ 1589, 1590, or 1591); United States v. Mozie, 752 F.3d 1271, 1286 (11th Cir. 2014) ("It is enough [for § 1591 liability] that [the defendant] 'recruited' the victims . . .  to engage in commercial sex acts even though they did not actually do so."); United States v. Jungers, 702 F.3d 1066, 1073 (8th Cir. 2013) ("In many, if not all cases, the commercial sex act is still in the future at the time the purchaser . . . [is] in violation of § 1591."); United States v.

Todd, 627 F.3d 329, 334 (9th Cir. 2010) ("The knowledge required of the defendant [for § 1591 liability] is such that if things go as he has planned, force, fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction."); see also United States v. Roy, 630 F. App'x 169, 170-71 (4th Cir. 2015) (adopting the approach in Todd, 627 F.3d at 334, while reviewing a conspiracy to violate § 1591 conviction).  This conclusion (that the objective of forced labor, forced services, or the intended trafficking need not be satisfied for liability to attach) is confirmed in part by the definition of "victim of trafficking" in a related statute as, among other things, a person who has been "harbor[ed] [or] obtain[ed] . . . for the purpose of a commercial sex act."  22 U.S.C. § 7102(10), (15).  It is therefore not to the point under the allegations in this case that no "act of commercial sex" with a third party was plausibly pled.

The district court's judgment dismissing Ricchio's claims against defendants Bijal, Inc., and the Patels is reversed, and this case is remanded for further proceedings.