[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10812
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00506-SPC-CM


ROBERT R. PRUNTY, JR.,

 Plaintiff - Appellant,

versus

ARNOLD & ITKIN LLP, et al.,

 Defendants,

JASON ITKIN,
Individual,
KURT ARNOLD,
Individual,
AVRAM BLAIR,
JEFFREY MEYER,
JOHN BRYAN MORGAN, et al.,

 Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 11, 2018)

Before MARTIN, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Robert Prunty, proceeding *pro se*, appeals the dismissal of his lawsuit against several attorneys, who he alleged mishandled a products liability claim that he sought to bring against a pharmaceutical company for personal injuries suffered by his son. The district court found that it lacked personal jurisdiction over the out-of-state defendants and that Mr. Prunty's amended complaint failed to state a claim against defendant John Morgan, a Florida citizen. After careful review, we affirm.

**I**

We recount the factual background as pled in Mr. Prunty's complaint, which we must take as true to determine whether it states a plausible claim. *See Chandler v. Sec'y, Fla. Dep't of Transp.*, 695 F.3d 1194, 1198–99 (11th Cir. 2012).

In August of 2013, Mr. Prunty saw an advertisement from the law firm of Morgan & Morgan regarding potential lawsuits concerning the drug Risperdal.[1]

_____

[1] Mr. Prunty alleges that John Morgan is the "owner" of Morgan & Morgan.

2

He researched the issue further and chose to contact Morgan & Morgan for a consultation "to find legal help for [his] son who was and is still suffering from lifelong Risperdal poisoning." D.E. 35 at 5. An attorney at Morgan & Morgan obtained lab tests and other medical records detailing the condition of Mr. Prunty's son. In October of 2013, however, a representative of Morgan & Morgan called Mr. Prunty and "suddenly declared they would no longer be representing [him] in the Risperdal action, but that they would try to locate a law firm who could." *Id*.

Later, attorneys from the out-of-state law firms Meyer Blair and Arnold & Itkin contacted Mr. Prunty at his Florida residence and asked if he was still interested in a lawsuit against the manufacturers of Risperdal. He stated that he was, so the parties executed a contract in October of 2013. Mr. Prunty alleges that these attorneys did not contact him again until 2016, when they sought the same medical information previously obtained by Morgan & Morgan. "Approximately [ ] five months later," Jason Itkin, a named partner at Arnold & Itkin, sent a letter to Mr. Prunty detailing an "Aggregated Settlement," which gave him until June 10, 2016 to opt out. In 2017, Mr. Itkin requested more medical information and explained to Mr. Prunty that a lawsuit had not been filed and would not be filed until more records were obtained.

Mr. Prunty alleges that he was "[c]onfused and infuriated" because the law firms did not file a Risperdal lawsuit. He alleges that he conducted further

3

research and learned that "[i]n or about 2015, an alliance of attorneys was officially created called 'The National Risperdal Litigation Team,' designed to somehow dispose of more than 50,000 [ ] potential Risperdal Plaintiff[s'] collected by the team members." *Id*. at 7.  He also alleges that (1) "the so-called link between Risperdal and gynecomastia" is a deception; (2) Risperdal causes more serious and permanent injuries than gynecomastia; and (3) several law firms in The National Risperdal Litigation Team misrepresent the number of lawsuits they have filed regarding Risperdal.

Mr. Prunty filed a lawsuit in Florida against the law firms and their named partners in September of 2017.  He amended his complaint as of right, but the district court dismissed that complaint and granted leave to amend a second time. The district court's order explained that it "maintain[ed] serious doubts as to the viability of [his] conspiracy claims" and gave several instructions on the necessity to plead plausible factual allegations and avoid a shotgun pleading.  *See generally* D.E. 33.

Mr. Prunty amended his complaint.  His second amended complaint names only the attorneys:  Jason Itkin, Kurt Arnold, Avram Blair, Jeffrey Meyer, John Morgan, Stephen Sheller, Shannin Specter, and Tom Kline.  Of these attorneys, only Mr. Morgan resides in Florida.  Against him, Mr. Prunty asserts "recruitment for peonage purposes," in violation of 18 U.S.C. § 1590; conspiracy to subject him

to involuntary servitude, in violation of the Thirteenth Amendment and 42 U.S.C. § 1985(3); conspiracy to abuse process and obstruct the course of justice, in violation of 42 U.S.C. § 1985(2); "peonage," in violation of 18 U.S.C. § 1581; "forced labor," in violation of 18 U.S.C. § 1589; and "involuntary servitude," in violation of 18 U.S.C. § 1584.  Against the out-of-state attorneys, Mr. Prunty brings claims for breach of contract, conspiracy to subject him to involuntary servitude, and conspiracy to abuse process and obstruct the course of justice.

The out-of-state defendants moved to dismiss for lack of personal jurisdiction.  The district court granted the motion.  Mr. Morgan was never served with the second amended complaint, but the district court *sua sponte* dismissed the claims against him with prejudice because they were frivolous and further amendment would be futile.  *See generally* D.E. 58.

## II

We review a district court's dismissal for lack of personal jurisdiction *de novo*.  *See Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008).  "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally

5

shifts back to the plaintiff to produce evidence supporting jurisdiction.'"    *Id.* (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). Therefore, the district court is permitted to consider facts outside the complaint in resolving a motion to dismiss for lack of personal jurisdiction.    We review its findings of fact for clear error.    *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

"We consider two questions in resolving personal jurisdiction:  (1) whether personal jurisdiction exists over the nonresident defendant[s] under Florida's long-arm statute, and (2) if so, whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution."  *Id.*

We turn first to Florida's long-arm statute, Fla. Stat. § 48.193, which we are required to apply "as would the Florida Supreme Court."  *United Techs.*, 556 F.3d at 1274.  We have previously recognized that "Florida's long-arm statute is to be strictly construed."  *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).  For the following reasons, we agree with the district court that Mr. Prunty has not met his burden to support personal jurisdiction over the out-of-state defendants under Florida's long-arm statute.[2]

As relevant here, § 48.193(1)(a)(1) provides jurisdiction over a defendant for a cause of action arising from "[o]perating, conducting, engaging in, or carrying on

---

[2] Because Florida's long-arm statute is not satisfied, we need not address whether the exercise of personal jurisdiction would violate the Due Process Clause. *See Louis Vuitton*, 736 F.3d at 1350.

a business or business venture in [Florida] or having an office or agency in [Florida]." Under this provision, "the activities of the defendant[s] must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). "Factors to consider in making this determination include: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients." *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 555 (Fla. 2d DCA 2017) (quotation marks omitted).

The out-of-state attorneys' affidavits established that they are not licensed to practice law in Florida, do not have offices in Florida, do not travel to Florida for business, and do not actively seek out Florida clients. In response, Mr. Prunty argued that personal jurisdiction was appropriate because the law firms used the Internet to contact clients and conduct business in Florida. But, "[e]lectronic communications from out-of-state offices into Florida do not establish conducting business in Florida." *Id*. at 556 (holding that numerous email exchanges and telephone negotiation, standing alone, was not sufficient to constitute "engag[ing] in a business venture in Florida under [§] 48.193(1)(a)(1)"). *See also Westwind Limousine, Inc. v. Shorter*, 932 So. 2d 571, 575 n.7 (Fla. 5th DCA 2006) ("We note

7

that merely posting a passive website does not constitute either the solicitation of business in Florida or the transaction of business in Florida for purposes of a jurisdictional due process analysis.") (alterations adopted).  Mr. Prunty, therefore, did not rebut the out-of-state attorneys' evidence that they do not conduct a general course of business activity within Florida.  We agree with the district court that personal jurisdiction is not appropriate on this basis.

Jurisdiction is also not appropriate under § 48.193(1)(a)(2), which requires that  the defendant have committed "a tortious act within this state."  "The statute expressly requires that the tort be committed in Florida."  *Casita, L.P. v. Maplewood Equity Partners L.P.*, 960 So. 2d 854, 857 (Fla. 3d DCA 2007).  Here, construing Mr. Prunty's second amended complaint liberally, no alleged tortious acts occurred in Florida.  Mr. Prunty's contract for legal services with the out-of-state attorneys provided that the "agreement [was] to be performed in Texas," D.E. 35-9, and he does not allege any specific tortious act that his attorneys committed in Florida.  Rather, the alleged malpractice and mishandling of his case on the part of his out-of-state attorneys occurred outside Florida.  *See Beta Drywall Acquisition, LLC v. Mintz & Fraade, P.C.*, 9 So. 3d 651, 653 (Fla. 4th DCA 2009) (holding that personal jurisdiction was appropriate based on legal malpractice occurring in Florida because the defendant caused faulty legal documents "to be filed in Florida which caused injury").  Similarly, Mr. Prunty's argument that

8

jurisdiction is appropriate under § 48.193(1)(a)(7) fails.  That provision applies only where a contract is breached "in this state by failing to perform acts required by the contract to be performed in this state."  Fla. Stat. § 48.193(1)(a)(7).  Here, the contract requires acts to be performed in Texas, not Florida.

Finally, jurisdiction is not proper under § 48.193(1)(a)(6) because Mr. Prunty has alleged only economic injuries.  *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) ("The Florida Supreme Court has held that § 48.193(1)(f) [now recodified as § 48.193(1)(a)(6)] applies only when a defendant's out of state actions cause personal injury or damage to physical property in the State of Florida.").

So, we affirm the dismissal, without prejudice, of the claims against the out-of-state attorneys for lack of personal jurisdiction.

### III

We next review the district court's dismissal of the complaint against Mr. Morgan for failure to state a claim.  A district court may dismiss an action *sua sponte* "as long as the procedure employed is fair."  *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011).  This generally requires that the district court "provide the plaintiff with notice of its intent to dismiss or an opportunity to respond."  *Id.* (quoting *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1069 (11th Cir. 2007)).  As noted, the district court gave Mr. Prunty notice that it

"maintain[ed] serious doubts as to the viability of [his] conspiracy claims," offered several instructions on the necessity to plead plausible factual allegations, and granted him a second chance to amend his complaint. *See* D.E. 33. We conclude that this procedure was fair. *See Tazoe*, 631 F.3d at 1336.

We agree with the district court that Mr. Prunty's complaint fails to state a claim against Mr. Morgan, the only remaining defendant. "Although we take the allegations of the complaint to be true on [a] motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Chandler*, 695 F.3d at 1198–98 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint based on legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" must be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Mr. Prunty brought six claims against Mr. Morgan. We first address the two conspiracy claims brought under 42 U.S.C. § 1985.

We cannot accept Mr. Prunty's conclusory allegation that The National Risperdal Litigation Team engaged in a conspiracy to harm him without "well-pleaded factual allegations" to support it. *See id*. at 679. We agree with the district court that his complaint does not allege any facts from which it can be inferred that Mr. Morgan agreed with the out-of-state lawyers to deprive Mr. Prunty of his rights. To the contrary, the only agreement plausibly alleged is an agreement to

10

provide legal services.  Mr. Prunty may believe that his attorneys mishandled his case, but this alleged failure does not constitute a violation of § 1985(2) (obstruction of justice) or § 1985(3) (deprivation of "equal protection of the laws, or of equal privileges").  *See Jiminez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) ("These rights include only select 'serious constitutional right[s].' . . . The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude.").

The remaining four claims also fail.  The *pro se* complaint cites criminal statutes prohibiting peonage, forced labor, and involuntary servitude which do not provide a private right of action, so we construe it to invoke 18 U.S.C. § 1595, which provides a civil remedy for violations of the chapter, including slavery and trafficking in persons.  These claims fail because the complaint does not allege that Mr. Morgan subjected Mr. Prunty to any type of compulsory service at all.  *See, e.g.,* 18 U.S.C. § 1589 (prohibiting a person from "provid[ing] or obtain[ing] the *labor or services* of a person" through various illegal means) (emphasis added); *Taylor v. Georgia*, 315 U.S. 25, 29 (1942) ("[P]eonage is a form of involuntary servitude[.]").  Although Mr. Prunty alleges he was "coerced" and kept in legal limbo, causing his claim to become barred by the statute of limitations, this sort of conduct concerns alleged legal malpractice, not violations akin to slavery and

11

human trafficking.  *See Brown v. City of Phila. Off. of Human Res.*, 2018 WL 4057224, at *2 (3d Cir. Aug. 27, 2018) ("Although 18 U.S.C. § 1595 . . . provides a civil remedy for violations of the Trafficking Victims Protection Act, Brown failed to allege any facts suggesting that the defendants subjected him to human trafficking, peonage, or the like."); *Ricchio v. McLean*, 853 F.3d 553, 556–58 (1st Cir. 2017) (Souter, Associate Justice (Ret.)) (holding that the complaint stated a claim under § 1595 where the plaintiff alleged that she was held in a hotel and forced into sexual slavery); *Muchira v. Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017) ("Section 1589 is 'intended to address *serious* trafficking, or cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence.'") (emphasis in original).

## IV

For the foregoing reasons, we affirm the rulings of the district court.[3]

**AFFIRMED.**

---

[3] Mr. Prunty also appeals the denial of his motion to compel the defendant law firms to provide a certificate of interested persons and corporate disclosure statement under Fed. R. Civ. P. 37(c). *See* D.E. 54.  The district court denied his motion because he did not comply with a local rule demanding a good faith conference and accompanying certificate.  *See* M.D. Fla. L.R. 3.01(g). Mr. Prunty has not shown that the district court abused its discretion in applying the local rule. *See Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009) ("We give great deference to a district court's interpretation of its local rules and review a district court's application of local rules for an abuse of discretion.") (quotation marks omitted).