# United States Court of Appeals
## For the First Circuit

No. 14-1136

UNITED STATES,

Appellee,

v.

JECINTA WAMBUI NGIGE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Barron, Selya, and Stahl,
Circuit Judges.

Lawrence Gatei, with whom Immigration & Business Law Group, LLP was on brief, for appellant.
Gail Fisk Malone, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

March 17, 2015

STAHL, Circuit Judge.   Following a bench trial on a record of stipulated facts, the district court convicted Defendant-Appellant Jecinta Wambui Ngige of conspiring to defraud the United States by participating in a sham marriage to secure a change in her immigration status.   On appeal, she argues that the prosecution was time-barred because she committed no overt act in furtherance of the conspiracy within the five-year period before the return of the indictment.   We affirm.

## I. Facts and Background

On June 13, 2012, a federal grand jury returned an indictment charging Ngige with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.   The indictment alleged that a third party (later identified as James Mbugua); MF (later identified as Michael Frank), a citizen of the United States; and Ngige, a citizen of Kenya who had entered the United States lawfully but whose authorization to remain in the United States had expired, "knowingly and willfully conspired and agreed . . . to participate in a sham marriage, and to make sworn false statements about that marriage to agencies of the United States Government, for the purpose of defrauding the United States."   The indictment maintained that the conspiracy had two objectives: (1) for Ngige's co-conspirators to profit financially by accepting payments from her in exchange for participating in the sham marriage; and (2) for Ngige to "acquire a change of her United States immigration status

to which she would not otherwise have been entitled by making false representations to agencies of the United States government about her marriage to and relationship with [Frank]."

The indictment charged Ngige with committing eight overt acts in furtherance of the conspiracy. According to the indictment, Ngige (1) arranged with another individual (Mbugua) to meet a United States citizen willing to marry her; (2) traveled to Maine on January 30, 2004, to meet Frank and, with him and other co-conspirators, apply for a marriage license, falsely stating on the application that she and Frank lived together; and (3) entered into a sham marriage with Frank, knowing that the "sole purpose of the wedding was to permit her to apply for a change in her immigration status to which she would not otherwise have been entitled." The indictment alleged that Ngige then (4) signed a Form I-485, dated March 19, 2004, seeking to adjust her immigration status on the basis of her marriage, which was subsequently filed with the U.S. Citizenship and Immigration Service ("USCIS"); (5) along with the Form I-485, filed or caused to be filed a Form I-130, also dated March 19, 2004, bearing Frank's forged signature and falsely representing that the two lived together in Attleboro, Massachusetts; and (6) filed or caused to be filed various documents in support of the I-485 and I-130 petitions, some purporting to show that she and Frank lived together although they did not. The indictment further stated that sometime after the I-

485 and I-130 petitions were filed with USCIS, Frank refused to assist Ngige with her change of immigration status request, and thereafter, Ngige (7) signed and filed a Form I-360, seeking a change of immigration status under the Violence Against Women Act ("VAWA") on the grounds that her citizen-spouse, Frank, was abusive to her. The Form I-360, dated August 14, 2006, falsely stated that she and Frank currently lived together. Finally, the indictment alleged that (8) on August 6, 2007, Ngige filed a psychological evaluation in support of her Form I-360 VAWA petition. That evaluation, dated September 28, 2006, contained various material falsehoods about the trajectory of Ngige's relationship with Frank.

In the district court, Ngige filed a motion to dismiss the indictment as time-barred, arguing that the filing of the psychological evaluation on August 6, 2007 -- the only overt act alleged within the five-year statute of limitations period, see 18 U.S.C. § 3282(a) -- was not done in furtherance of the charged conspiracy. She also asserted that both she and Frank withdrew from the conspiracy in 2006, and that she had disavowed the conspiracy by filing for divorce. The district court denied the motion, holding that Ngige's arguments rested on disputes of fact which would need to be resolved by the presentation of evidence at trial. United States v. Ngige, No. 2:12-cr-00098-JAW, 2013 WL 950689, at *2 (D. Me. Mar. 12, 2013).

-4-

Ngige waived her right to a jury trial, and the case proceeded to a bench trial on a record of stipulated facts and attendant exhibits. The following paragraphs summarize the stipulations before the court.

Ngige, a native of Kenya, traveled to the United States on a visitor's visa in December 2001. After her visa expired six months later, she remained in the United States without a legal basis for doing so. Sometime prior to January 30, 2004, Ngige agreed to pay Mbugua to introduce her to a United States citizen willing to marry her for financial consideration. The stipulations averred that this arrangement had "two goals. One was for Mbugua and the U.S. citizen/husband to make money. The other was for Ms. Ngige to be able to apply for lawful residency . . . as the spouse of a U.S. citizen by marrying Frank and pretending to establish a life with him."

On January 30, 2004, Ngige traveled from Massachusetts to Maine to meet with Mbugua and Frank. Ngige and Frank obtained a marriage license, untruthfully indicating that they lived together in Lewiston, Maine. The two were then married in a brief civil ceremony. Ngige paid Mbugua, who gave some of the money to Frank. Ngige then returned to Massachusetts. At Ngige's request, Frank traveled to Massachusetts three times after the wedding, and on at least one occasion, she paid Frank the cost of his travel. While he was in Massachusetts, Ngige and Frank organized immigration

paperwork and took steps to make it appear as though they lived together, such as opening a joint bank account.

On March 19, 2004, Ngige signed a Form I-485, Application to Register Permanent Resident or Adjust Status, to adjust her immigration status based on her marriage to Frank. The Form I-485 was filed with USCIS, along with a Form I-130, Petition for Alien Relative, which purported to bear Frank's signature, and various documents in support of the petitions. The I-130 form and some of the supporting documents represented that Ngige and Frank lived together in Attleboro, Massachusetts, in order to "create the impression that she and Mr. Frank lived together and shared a life when they did not."

USCIS scheduled Ngige's change-of-status request for an interview and mailed her notice of a date and time. Frank refused to accompany her to the interview, even after she traveled to Maine twice to convince him to continue helping her with her petition. The parties stipulated that sometime in 2005, during Ngige's second trip to Maine, Frank withdrew from the conspiracy and had no further involvement in it.

The stipulations stated that on January 31, 2006, Ngige filed for divorce and that her complaint for divorce falsely stated that she and Frank lived together until January 6, 2005. The divorce was finalized in April 2007. On August 14, 2006, while the divorce was still pending, Ngige signed and submitted the Form I-

360 VAWA petition seeking a change in immigration status as a self-petitioning spouse of an abusive U.S. citizen. On the form, she named Frank as the abusive citizen-spouse and wrote that the two lived together in Attleboro from February 2006 until "present." In support of her petition, Ngige submitted multiple documents previously submitted to USCIS in March 2004 with the I-485 and I-130 forms.

On July 15, 2007, USCIS informed Ngige that the agency could not act on her VAWA I-360 petition absent evidence that Frank subjected her to battery or extreme cruelty. In response, on August 6, 2007, Ngige filed a psychological evaluation dated September 28, 2006. The evaluation contained Ngige's knowingly false statements purporting to describe how she and Frank met, began dating, and married before Frank became emotionally abusive to Ngige. The evaluation reported that Ngige suffered from depression and panic attacks due to the abuse. Upon receipt of the evaluation, USCIS requested further documentation of spousal abuse. Ngige submitted no further documentation, and USCIS denied her VAWA petition on November 2, 2007.

Aside from the foregoing stipulations and six attendant exhibits, neither party sought to introduce any further evidence. On September 9, 2013, the district court found Ngige guilty of conspiracy as charged in the indictment. Ngige requested written findings of fact, see Fed. R. Crim. P. 23(c), which the district

court issued on September 18, 2013.  United States v. Ngige, No. 2:12-cr-00098-JAW, 2013 WL 5303725 (D. Me. Sept. 18, 2013).  The district court adopted the parties' stipulations as its findings of fact, id. at *1, and explained its guilty verdict, id. at *4-5.  On January 29, 2014, the district court sentenced her to four months in prison, followed by one year of supervised release.  This appeal followed.

## II. Analysis

Ngige's appeal rests on her contention that the district court incorrectly found that the filing of the psychological evaluation in support of her VAWA petition constituted an overt act in furtherance of the charged conspiracy.  We address this and related arguments at both the motion to dismiss and motion for acquittal stages of the proceedings.

### A. Sufficiency of the Indictment

We begin with our de novo review of the district court's refusal to dismiss the indictment on statute of limitations grounds.  United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014).

The government charged Ngige under 18 U.S.C. § 371, which is subject to the general five-year statute of limitations for criminal actions, see 18 U.S.C. § 3282(a).  The indictment was filed on June 13, 2012.  To be timely, the indictment must allege that the conspiracy still existed and that at least one overt act

in furtherance of the conspiracy was committed after June 13, 2007. See Stewart, 744 F.3d at 21. Both parties agreed below and on appeal that only the filing of the psychological evaluation on August 6, 2007 fits within § 3282(a)'s five-year time frame. Ngige argues that submitting the psychological evaluation cannot be considered an overt act in furtherance of the conspiracy charged, because her co-conspirators did not contemplate utilizing VAWA to achieve a change in Ngige's immigration status. See Grunewald v. United States, 353 U.S. 391, 397 (1957) ("[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy.").

The problem with Ngige's argument is that it fails to attack the facial validity of the indictment and instead challenges the government's substantive case. An indictment must allege each of the required elements of conspiracy, but the government need not put forth specific evidence to survive a motion to dismiss. Stewart, 744 F.3d at 21 (citing Fed. R. Crim. P. 7(c)(1)). When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true, mindful that "the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment

-9-

are sufficient to apprise the defendant of the charged offense." United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012). Indeed, "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2011).

Here, the indictment alleged that the conspiracy's objective was to pay Frank and Mbugua to help Ngige "acquire a change of her United States immigration status" by "making false representations . . . about her marriage to and relationship with [Frank]." The psychological evaluation filed in support of the VAWA petition, which the indictment alleged contained "material falsehoods" about the relationship, sought to achieve just that. The district court properly concluded that Ngige's more limited characterization of the conspiracy's scope, along with her contention that the conspiracy had ended before the filing of the psychological evaluation, rested on factual disputes left to the factfinder. See Stewart, 744 F.3d at 22; see also United States v. Upton, 559 F.3d 3, 11 (1st Cir. 2009) ("Determining the contours of the conspiracy ordinarily is a factual matter entrusted largely to the jury.").

## B. Sufficiency of the Evidence

Ngige raises various challenges to the sufficiency of the evidence supporting her conviction. She again asserts that the

filing of the psychological evaluation in support of her VAWA petition cannot be considered an overt act because it exceeded the scope of the charged conspiracy. Ngige also argues that the conspiracy was no longer ongoing at the time she filed the psychological evaluation. We review a bench trial conviction de novo, examining the facts and inferences in the light most favorable to the verdict. United States v. Tum, 707 F.3d 68, 69 (1st Cir. 2013).

To make out a case of conspiracy under 18 U.S.C. § 371, the government must show the existence of an agreement with an unlawful object (here, marriage fraud, see 8 U.S.C. § 1325(c)), the defendant's knowing participation in the conspiracy, and an overt act in furtherance of that agreement. United States v. Serunjogi, 767 F.3d 132, 139 (1st Cir. 2014). Ngige concedes that the record establishes the existence of the conspiracy and her knowing participation in it, but argues that the scope of the conspiracy was limited to pursuing a change in her immigration status through the "ordinary" marriage-based application process -- that is, through a Form I-130 and a Form I-485 -- and thus that filing the psychological evaluation in support of her VAWA application constituted her own unilateral deed beyond the bounds of the parties' agreement. Without the filing of the psychological evaluation, her argument goes, the prosecution is time-barred.

-11-

We find this argument unavailing. Nowhere in the parties' stipulations adopted by the district court does it say that the three co-conspirators solely agreed to a change-in-immigration application through a Form I-130 and a Form I-485. Instead, the record amply supports the contention that Ngige, Mbugua, and Frank agreed more generally to facilitate a sham marriage in order to make Ngige eligible for lawful residency. Ngige's status as a spouse of a citizen triggered her eligibility to file a Form I-360 VAWA-based petition for a change in status. See 8 U.S.C. § 1229b(b)(2)(A)(i). Thus, her VAWA petition, along with the psychological evaluation submitted in support, was merely a shift in tactics to achieve the same basic goal: to capitalize on a sham marriage in order to achieve a change in immigration status. Cf. Stewart, 744 F.3d at 23 n.5 ("[J]ust because a conspiratorial objective could have been achieved via different means does not suggest that the means selected were not in furtherance of the conspiracy."); United States v. Sarantos, 455 F.2d 877, 883 (2d Cir. 1972) (in a marriage fraud case, rejecting argument that the scope of the conspiracy was limited to the filing of the initial visa petition and upholding conviction where defendant knew the objective of the conspiracy was to achieve permanent residency for co-conspirator, even though "he may not have been familiar with every step that would be taken by his co-conspirators to achieve . . . [the conspiracy's] objective[]").

-12-

As an alternative ground for reversal, Ngige argues that the conspiracy terminated when Frank withdrew in 2005, and thus the conspiracy had ended by the time she filed the psychological report in August 2007. But nothing in the record supports the contention that the third co-conspirator, Mbugua, had ever withdrawn his involvement. An inactive co-conspirator is "'presumed to be a continuing member'" of an ongoing conspiracy unless the defendant has established that co-conspirator's withdrawal. United States v. Pizarro-Berríos, 448 F.3d 1, 10 (1st Cir. 2006) (quoting United States v. Robinson, 390 F.3d 853, 882 (6th Cir. 2004)). Although the stipulations are silent as to Mbugua's role in the conspiracy after Ngige paid him for his services, the "[m]ere cessation of activity in furtherance of the conspiracy does not constitute withdrawal." United States v. Ciresi, 697 F.3d 19, 27 (1st Cir. 2012) (alteration in original) (citation omitted); see also Smith v. United States, 133 S. Ct. 714, 720 (2013) ("Passive nonparticipation in the continuing scheme is not enough to sever the meeting of minds that constitutes the conspiracy.").

Finally, Ngige contends that the conspiracy was no longer ongoing in August 2007 because she herself withdrew from the conspiracy in January 2006, when she filed for divorce. "Withdrawal is a demanding defense requiring affirmative evidence of an effort to defeat or disavow [the conspiracy] . . . ." United States v. Potter, 463 F.3d 9, 20 (1st Cir. 2006); see also Ciresi,

-13-

697 F.3d at 27 (describing the standard for withdrawal as "'strict' and not easily met" (quoting United States v. Piper, 298 F.3d 47, 53 (1st Cir. 2002))). It is arguably true that when she filed for divorce in January 2006, Ngige had given up on convincing Frank to continue supporting her Form I-130/Form I-485 petition. But later that same year she utilized her status as the spouse of a U.S. citizen to file a VAWA-based Form I-360 to achieve a change in her immigration status, and the following year, she submitted the psychological evaluation to buttress that petition. Cf. Stewart, 744 F.3d at 24 (holding that rescinding one type of change-of-immigration-status petition does not constitute abandonment of the conspiracy). While Ngige took steps to dissolve the marriage, she continued to submit false statements to USCIS about her relationship with Frank in order to achieve the ultimate goal of a change in her immigration status. Nothing in the record supports Ngige's contention that she withdrew from the conspiracy; to the contrary, the record supports the conclusion that she continued to take affirmative steps to achieve the conspiracy's objective. Cf. Upton, 559 F.3d at 10 ("A conspiracy endures as long as the co-conspirators endeavor to attain the 'central criminal purposes' of the conspiracy." (quoting Grunewald, 353 U.S. at 401)).

In sum, we conclude that the record amply supports the district court's guilty verdict.

## III. Conclusion

For the foregoing reasons, we <u>affirm</u> Ngige's conviction.