# United States Court of Appeals
## For the First Circuit

No. 24-1223

UNITED STATES,

Appellee,

v.

ÁNGEL PÉREZ-OTERO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

José R. Olmo-Rodríguez for appellant.
David M. Lieberman, Attorney, U.S. Department of Justice,
with whom W. Stephen Muldrow, United States Attorney for the
District of Puerto Rico, Myriam Y. Fernández-González, Assistant
United States Attorney, Antoinette T. Bacon, Supervisory Official,
Criminal Division, and Nicholas W. Cannon, Attorney, Public
Integrity Section, were on brief, for appellee.

May 15, 2026

**BARRON**, **Chief Judge**. Following a six-day trial in the United States District Court for the District of Puerto Rico, a jury found Ángel Pérez-Otero ("Pérez"), the former mayor of Guaynabo, Puerto Rico, guilty of conspiracy to commit federal-program bribery, federal-program bribery and/or aiding and abetting the same, and extortion under color of official right. The District Court sentenced Pérez to sixty months of imprisonment for the first of his three convictions and sixty-three months of imprisonment for each of his other convictions. The sentences were to be served concurrently. Pérez challenges his convictions on the grounds that there was insufficient evidence presented at trial, a defect in the indictment, a prejudicial variance, improper instructions given to the jury, and a failure by the District Court to protect against jury bias. He also challenges the procedural and substantive reasonableness of his sentences. We affirm.

**I.**

On December 8, 2021, a grand jury in the District of Puerto Rico indicted Pérez on three counts. The first count was for conspiracy to accept bribes and kickbacks, in violation of 18 U.S.C. § 371. The second count was for federal program bribery and/or aiding and abetting the same, in violation of 18 U.S.C. § 666(a)(1)(B) and 18 U.S.C. § 2. The third count was for extortion under color of official right, in violation of 18 U.S.C.

- 2 -

§ 1951.[1]  The indictment alleged that while Pérez was the elected mayor of Guaynabo, Puerto Rico, he used his power over that municipality's contracting process to steer and maintain public contracts in favor of Oscar Santamaría-Torres ("Santamaría"), the owner of a construction company, in exchange for payments from Santamaría.

On January 9, 2023, Pérez filed a motion to dismiss the indictment for reasons that we will address in the course of our analysis of the merits of his challenges on appeal.  The District Court denied the motion on February 28, 2023.  Trial began on March 13, 2023, and, nine days later, the jury found Pérez guilty of each of the three counts for which he was charged.

On April 5, 2023, Pérez moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c).  The District Court denied the motion on February 7, 2024, and proceeded to sentence Pérez to sixty months of imprisonment for his conviction on count one and sixty-three months of imprisonment for his convictions on counts two and three, respectively, with the sentences to be served concurrently.  The District Court also sentenced Pérez to three years of supervised release for his

---

[1] The indictment also included a forfeiture allegation under 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C) conditioned on Pérez being convicted under the preceding counts.

conviction on each count, with each term of supervised release to be served concurrently.

This timely appeal followed.

## II.

We start with Pérez's challenge to the denial of his motion for judgment of acquittal. Reviewing de novo, we consider "the evidence . . . 'in the light most favorable to the prosecution'" and assess whether, on this record, a rational juror could find Pérez guilty of each of the underlying offenses beyond a reasonable doubt. United States v. Tanco-Baez, 942 F.3d 7, 15 (1st Cir. 2019) (quoting United States v. Lara, 181 F.3d 183, 200 (1st Cir. 1999)). There is no merit to this challenge.

## A.

Pérez first contends that, under McCormick v. United States, 500 U.S. 257, 273 (1991), there was insufficient evidence presented at trial. That case, he claims, imposes a requirement on what the government must prove in cases like his. Nevertheless, despite McCormick, he protests, the government did not proffer sufficient evidence to meet this requirement as to any of his convictions. Thus, he reasons, all three of his convictions must be vacated. We do not agree.

McCormick concerned 18 U.S.C. § 1951, which makes it a crime for any person to, among other things, receive "property

from another . . . under color of official right." Id. at 261 n.2 (quoting 18 U.S.C. § 1951).  The Court held there that when the "property" takes the form of a political campaign contribution, the government, to secure a conviction for a violation of § 1951, must prove that the contribution was "made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." Id. at 273 (emphasis added).  The Court reasoned that "[t]o hold otherwise would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures." Id. at 272.

Pérez contends that the trial evidence did not suffice to permit a rational juror to find beyond a reasonable doubt that Santamaría's payments to Pérez -- and thus the payments that undergird his conviction for violating § 1951 -- were anything other than campaign contributions.  Therefore, he argues, it follows from McCormick that the government could convict him of violating § 1951 only if it could prove beyond a reasonable doubt that there was an "explicit quid pro quo" between himself and Santamaría as to those payments.  Pérez then continues by arguing that the trial evidence did not suffice to permit a rational juror to find that Santamaría made those "campaign contributions" to Pérez in return for an "explicit quid pro quo."  Thus, he closes,

- 5 -

there was insufficient evidence to support that conviction.  He maintains that the same holds true with respect to his convictions under 18 U.S.C. § 371 (count one) and 18 U.S.C. §§ 666(a)(1)(B) and 2 (count two), for which, he asserts, McCormick's logic equally applies.

We conclude, however, that a rational juror on this record could have found beyond a reasonable doubt that Santamaría's payments were not campaign contributions.  Accordingly, on that basis alone, we reject this ground for reversing the convictions.

Pérez is right that Santamaría testified that he made at least some of the payments on which the indictment's charges rest to help pay off Pérez's campaign "debt."  But, even if payments made to relieve campaign "debt" constitute "campaign contributions" for purposes of McCormick, a rational jury on this record could have found beyond a reasonable doubt that, despite this testimony, the payments were not made to pay off such a debt. See United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995) ("[A]mong competing inferences, two or more of which are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.").

For example, the evidence supportably shows that when Santamaría wanted to make contributions to Pérez's campaign, he gave Pérez's campaign director cash in other people's names.  By contrast, the record supportably shows that when Santamaría made

the payments for which Pérez was charged, Santamaría made them in secret, passing cash-stuffed envelopes directly to Pérez either under a table or in a parking lot.

The evidence also supportably shows that, even though Pérez understood that he was required to "inform" the Office of the Electoral Comptroller of any cash campaign contributions "in [his] income and expense report[s]," the reports he submitted to the Office from January 2019 through December 2021 -- when the allegedly illicit payments were made -- did not mention any donation in Santamaría's name. This feature of the record comports with the testimony of a senior auditor at the Office of the Electoral Comptroller that Pérez's campaign reports recorded only $6,223 in debt in 2019, even though Santamaría testified that the ostensible campaign-debt repayments, totaling some $70,000, began "at the end of 2018, beginning of 2019."

Finally, Santamaría testified that he continued to make surreptitious payments to Pérez even after the campaign's supposed debt was fully paid off. He stated that he did so to "keep the relation alive" and so that Pérez would continue to "help [him] get municipal contracts."

Pérez fails to meaningfully grapple with any of the evidence we have just recounted. Instead, he merely recasts that evidence by offering non-incriminating explanations for the conduct it supportably shows and emphasizes the portion of

Santamaría's testimony that he contends supports a contrary inference about whether the payments in question were campaign contributions. This is not enough. Because a rational jury could reject Pérez's characterizations of the evidence and find that the payments were not campaign contributions, we must reject this McCormick-based challenge to the sufficiency of the evidence. See United States v. Cruz-Ramos, 987 F.3d 27, 36 (1st Cir. 2021).

**B.**

Pérez next argues that the District Court erred in denying his motion for judgment of acquittal because, McCormick's "explicit promise" requirement aside, the evidence did not suffice to show that any of Santamaría's payments were made in return for a promise by Pérez to perform official acts -- i.e., as part of a quid pro quo -- explicit or otherwise. On this basis, he argues that his convictions must be reversed because both of his non-conspiracy-related convictions require proof of a quid pro quo. We must reject this challenge because we do not agree that the evidence was insufficient to permit a rational juror to find beyond a reasonable doubt that the payments were made in return for such a promise.

Pérez contends that the evidence concerning Santamaría's payments suffices merely to show that Santamaría sought to "gain access to [Pérez] with the silent, and unexpressed, intention of

obtaining municipal contracts." He further argues that "Santamaría did not testify about any . . . quid pro quo, either explicit, implicit, or express." He therefore contends that "no evidence" of a quid pro quo was presented, not "even a wink, or a nod."

Santamaría expressly testified, however, that he "made illegal payments to . . . Pérez . . . . in order to get contracts and . . . benefits from the Municipality of Guaynabo." In fact, Santamaría agreed that the payments could fairly be categorized as "bribes." In addition, there was ample circumstantial evidence to support a finding that -- consistent with the testimony just described -- both Santamaría and Pérez understood that the payments in question were made as part of a quid pro quo. See United States v. McDonough, 727 F.3d 143, 153 (1st Cir. 2013) ("[E]vidence of a corrupt agreement in bribery cases is usually circumstantial . . . . " (quoting United States v. Friedman, 854 F.2d 535, 554 (2d Cir. 1988))); United States v. DeQuattro, 118 F.4th 424, 444-45 (1st Cir. 2024).

The record supportably shows that Pérez began discussing municipal contracts that Santamaría's construction company, Island Builders, could work on "less than six months" after Santamaría began making cash payments to Pérez. These payments, moreover, were made "in secret" -- oftentimes, literally "[u]nder the table." See DeQuattro, 118 F.4th at 446 ("[T]he extent to which the parties

- 9 -

went to conceal their bribes is powerful evidence of their corrupt intent." (quoting United States v. McNair, 605 F.3d 1152, 1197 (11th Cir. 2010))); United States v. Turner, 684 F.3d 244, 258 (1st Cir. 2012).

The record also contains evidence that suffices to show that Pérez assisted Island Builders in receiving a municipal contract for a road-construction project in Guaynabo. And there is evidence that suffices to show that when Santamaría was concerned that a lucrative asphalt-paving portion of that project was going to be excised, Pérez told Santamaría "he would manage the thing" and that, thereafter, the asphalt-paving portion of the contract remained the same.

Finally, separate from the road-construction project just discussed, there is evidence in the record that on August 19, 2021 -- the same day that Santamaría clandestinely passed $5,000 to Pérez, who then "put [the money] [in] his socks" -- Pérez told Santamaría that Island Builders could "have one" of three "new contracts" that were coming up. (Emphasis added.) This statement, given its timing, accords with Santamaría having made the payments to Pérez as part of a quid pro quo.

Pérez argues that the evidence recounted above suffices to show only that he "was working in the best interests of the municipality [in] seeking companies to compete for municipal contracts." To substantiate this argument, he asserts that there

- 10 -

is evidence that "Island Builders participated in additional bid processes, in Guaynabo, unsuccessfully"; that he "did not influence the decisions of the [municipal] bid board" (the group that reviews bids on public contracts); and that he provided benefits to Santamaría for reasons other than the receipt of illicit payments. By way of example, he argues that the "profitable asphalt" portion of the contract remained the same not because he was being bribed, but because "Santamaría threatened to sue."

These arguments are asserted in conclusory fashion without record citation. See Rivera-Corraliza v. Morales, 794 F.3d 208, 226-27 (1st Cir. 2015). But even if we were to overlook that problem, Pérez's contentions do not come to grips with the competing evidence recounted above that supportably shows that Santamaría made the payments as part of a quid pro quo. See Olbres, 61 F.3d at 970; United States v. O'Donovan, 126 F.4th 17, 31 (1st Cir. 2025) ("While the defendant casts those facts as consonant with a lawful lobbying effort, a reasonable jury could have inferred that the defendant had proposed a bribery scheme.").

Pérez separately appears to rely on his favorable characterizations of the evidence to argue that the record does not suffice to show that he "committed (or agreed to commit) an 'official act,'" McDonnell v. United States. 579 U.S. 550, 555 (2016), which, he argues, the government was required to establish

for him to be convicted of any of the charged offenses. But, even assuming that Pérez is correct that the government was required to meet this official-act requirement to convict him of each count, we conclude that the evidence sufficed.

Specifically, there was sufficient evidence for the jury to find beyond a reasonable doubt that Pérez influenced the bid board so that Island Builders would receive the road-construction project in Guaynabo. See id. at 574 ("That decision or action may include using his official position to exert pressure on another official to perform an 'official act,' . . . ."); United States v. Carrasco, 79 F.4th 153, 161-62 (1st Cir. 2023). Therefore, on this record, we conclude that a rational jury could have found beyond a reasonable doubt that, as Santamaría testified, all of Santamaría's payments were made to Pérez in exchange for "contracts and . . . benefits from the Municipality of Guaynabo."[2]

---

[2] In a final effort to bolster this argument, Pérez also finds fault with the government's introduction of "improper testimony" that, he argues, "misled the jury" and "unduly prejudiced" him. This contention, however, does not support his challenge to the sufficiency of the evidence. When we review whether evidence was sufficient to support a conviction, we do so "by reference to all the evidence offered by the government that was admitted by the court, even if the court erroneously admitted some of that evidence." United States v. O'Donovan, 126 F.4th 17, 38 (1st Cir. 2025) (citation modified).

## C.

Pérez's remaining ground for challenging the District Court's denial of his motion for judgment of acquittal is also without merit. Here, he contends that the cash payments that Santamaría made to him in May, July, and August 2021 "came after the [road-construction] contract was awarded to Island Builders" in June 2020. He therefore contends that those payments constitute gratuities rather than bribes. (Citing United States v. Fernandez, 722 F.3d 1 (1st Cir. 2013).) In consequence, he argues, a rational jury could not find beyond a reasonable doubt that he was guilty of count two because that count is predicated solely on these three payments and the government had to establish, with respect to the offense charged in count two, that Pérez "solicit[ed], demand[ed], accept[ed], [or] agree[d] to accept" bribes rather than gratuities. We are not convinced.

As an initial matter, we note that, contrary to Pérez's seeming assumption, if there is an "agreement to exchange a thing of value for an act" before that act is undertaken, United States v. Fernandez, 722 F.3d 1, 19 (1st Cir. 2013), then it does not matter that the "thing of value" was exchanged after that act had been undertaken. See United States v. Gracie, 731 F.3d 1, 3 (1st Cir. 2013) ("The essential distinction between a bribe and a gratuity is that a bribe requires a quid pro quo, the exchange of something of value for influence over some official conduct of the

- 13 -

recipient."); <u>Snyder</u> v. <u>United States</u>, 603 U.S. 1, 19 (2024) ("Congress made clear that the timing of the agreement is the key, not the timing of the payment . . . ."). Thus, the mere fact that the payments at issue were given to Pérez after the official act was alleged to have been undertaken does not suffice to show that the payments were gratuities.

Moreover, we do not accept Pérez's implicit assertion that the May, July, and August payments were necessarily made in relation to Island Builder's acquisition of the road-construction contract in June 2020. A rational jury could find that the payments instead were made as part of an agreement in which Pérez would act at a later date regarding matters unrelated to the acquisition of that particular contract. <u>See</u> <u>United States</u> v. <u>Cortés-Caban</u>, 691 F.3d 1, 24 (1st Cir. 2012) (looking at the "evidence[] taken as a whole and in the light most favorable to the prosecution" (citation modified)). For instance, as recounted above, the record supportably shows that on August 19, 2021, after two of the three relevant payments were made, Pérez confirmed with Santamaría that Island Builders could "have one" of three "<u>new</u> contracts" that were coming up. (Emphasis added.) We therefore reject Pérez's timing-based contention for deeming the evidence insufficient as to his conviction for count two.

- 14 -

Pérez separately challenges the denial of his motion to dismiss the indictment. To support this challenge, he contends that "because [the indictment] was grounded on allegations of payments of political campaign contributions," McCormick required the indictment to allege "an explicit quid pro quo." 500 U.S. at 273. Thus, he argues that, because the indictment did not contain any such allegation, the District Court erred in denying his motion to dismiss the indictment. Reviewing de novo, see United States v. Savarese, 686 F.3d 1, 6 (1st Cir. 2012) (citing United States v. Lopez-Matias, 522 F.3d 150, 153 (1st Cir. 2008)), we disagree.

Pérez is right that, under McCormick, an individual can be found guilty of violating 18 U.S.C. § 1951 by agreeing to perform an official act in exchange for campaign contributions only if there is evidence that the contributions were made "in return for an explicit promise or undertaking by the official." 500 U.S. at 273 (emphasis added). He acknowledges, though, that this "explicit promise" requirement "applies only in the context of campaign contributions." McDonough, 727 F.3d at 155 n.4; see McCormick, 500 U.S. at 268-69 (declining to consider how the statute should be applied as to "payments made to elected officials that are properly determined not to be campaign contributions").

None of the counts, however, charged Pérez with receiving a bribe in the form of a campaign contribution.

Count one stated that Pérez "took steps benefitting [Santamaría] and his business" "[i]n exchange for cash payments"; count two detailed that Pérez "corruptly solicit[ed]" or "accept[ed]" "three individual $5,000 cash payments"; and count three alleged that Pérez "obtained property not due to him." See United States v. Cruzado-Laureano, 404 F.3d 470, 482 (1st Cir. 2005) ("[A] specific quid pro quo is necessary for conviction under [18 U.S.C. § 1951] when an official receives a political contribution." (emphasis added)).

Pérez does argue that the indictment was required to describe the aforementioned "cash payments" as "political campaign contributions" because "an objective reading of the grand jury transcript reveals that" the cash payments that the government based the indictment on were made in the course of offsetting "campaign expenses." But "[i]t is well settled that an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge[s] on the merits." United States v. Capozzi, 486 F.3d 711, 726 (1st Cir. 2007) (citation modified) (quoting United States v. Maceo, 873 F.2d 1, 2-3 (1st Cir. 1989)). And "courts take the facts alleged in the indictment as true, mindful that 'the question is not whether the government has presented enough evidence to support the charge.'" United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (quoting Savarese, 686 F.3d at 7); see United States v.

- 16 -

Guerrier, 669 F.3d 1, 3-4 (1st Cir. 2011). Therefore, because the indictment on its face alleged simply that Pérez received bribes -- not bribes in the form of campaign contributions -- Pérez's challenge to the indictment fails.[3] See Ngige, 780 F.3d at 502 ("The problem with [the defendant's] argument is that it fails to attack the facial validity of the indictment and instead challenges the government's substantive case.").

## IV.

Pérez next contends that, even if the indictment was not defective, there was a variance at trial. A variance "occurs when the government relies at trial on different facts than those alleged in the indictment to prove the same offense." United States v. Condron, 98 F.4th 1, 24 (1st Cir. 2024) (quoting United States v. Katana, 93 F.4th 521, 530 (1st Cir. 2024)). To warrant disturbing a conviction, a variance must be prejudicial. United States v. Chan, 981 F.3d 39, 52 (1st Cir. 2020) (quoting United States v. Dellosantos, 649 F.3d 109, 116 (1st Cir. 2011)).

---

[3] At one point, Pérez seems to make the argument that the indictment is defective because one of the witnesses at the grand jury proceeding provided "erroneous information" that "influenced the grand jury." Insofar as this argument -- which lacks citation -- is cognizable, it is waived for lack of development. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Pérez argues that there was a variance in his case because "the indictment . . . did not" allege that the payments were "political campaign contributions," but the "trial testimony" concerned "precisely that." He contends that the asserted variance was prejudicial "because the indictment did not place [him] on notice that he was facing charges in relation to political campaign contributions." See id. (quoting Dellosantos, 649 F.3d at 125).[4] In further describing the claimed prejudice, he asserts that "if the indictment had provided adequate notice that he was being charged with [the receipt of] political campaign contributions," his trial "strategy would have been different."

There is some basis for concern that the jury convicted Pérez based on his having received bribes from Santamaría in the form of campaign contributions, notwithstanding that the indictment did not allege an "explicit promise or undertaking by the official to perform or not to perform an official act." McCormick, 500 U.S. at 273. The District Court instructed the jurors that if they found that Santamaría's payments were campaign contributions, then the government needed to "prove that the contributions were offered, made, or accepted in return for an

---

[4] There are at least two other ways "in which a variance may cause unfair prejudice." Chan, 981 F.3d at 52. Pérez's only non-perfunctory argument, however, concerns notice. To the extent that his briefs can be read to advance an alternative basis for why he was prejudiced, the argument has been waived for lack of development. See Zannino, 895 F.2d at 17.

explicit promise" for Pérez's receipt of those payments to "constitute a federal crime."

Pérez did not preserve his variance argument below, however. Nor did he develop on appeal any argument under the plain error standard of review in support of it. See United States v. Tang, 160 F.4th 237, 247 n.7 (1st Cir. 2025). For that reason alone, his variance-based challenge fails.

In any event, his sole developed ground for claiming prejudice on appeal sounds in notice, as he contends that he "receive[d] inadequate notice of the charge[s] against him and [was] thus taken by surprise at trial." (Quoting Chan, 981 F.3d at 52.) Yet, more than two months before trial began, in his motion to dismiss the indictment, Pérez argued that the payments he was being charged with accepting "took the form of campaign contributions." Additionally, during opening arguments at trial, Pérez's counsel asserted that the evidence would show that the payments in question were "political contributions." "[T]he record" therefore shows that Pérez "had sufficient notice of, and was able to defend himself against" the alleged theory that he received bribes in the form of campaign contributions. Katana, 93 F.4th at 538; see id. at 537 (finding that the record did not "suggest that [the defendant] was so in the dark about the government's prosecution theory at trial that he could not prepare"

- 19 -

a proper defense (citation modified)).  Accordingly, we reject this challenge on this ground as well.

## V.

Pérez next takes aim, as he did below, at the following statement that the District Court made to the jury: "There has been testimony that certain, but not all, of the moneys that Santamaría gave to [Pérez] constituted campaign contributions or were intended to pay a political campaign debt."  Pérez contends that, in making this statement, the District Court "impermissibly commented its opinion on the evidence" and "invaded the province of the jury who had to find . . . whether the payments were political campaign contributions."  On that basis, he contends that his convictions must be vacated.

Pérez rests this challenge on his reading of the phrase "certain, but not all."  He takes it to mean that that the District Court "told the jury that some payments were political campaign contributions, and some were not."

The government disputes that way of understanding the statement.  It interprets the District Court merely to have been stating a fact -- namely, that Santamaría testified that some of the payments were not campaign contributions.  It therefore argues that the District Court simply "recited the record" and so did not impermissibly invade the province of the jury.

As support for its understanding of the statement, the government points to Santamaría's testimony, which the government describes as making out "three types of payments: (1) cash to Pérez for the purpose of paying a $70,000 debt, (2) cash to Pérez with the goal of obtaining municipal contracts and benefits, and (3) campaign contributions to an official with Pérez's campaign." (Citations omitted.) Additionally, the government notes that the District Court recited a set of instructions that "made clear that the jury had province over the proper characterization of Santamaría's payments."

We cannot agree with the government that, in making the statement in question, the District Court did not comment on the evidence. On its face, the statement draws an inference from the evidence by effectively asserting that <u>none</u> of the testimony demonstrated that Santamaría made campaign contributions. We need not decide, however, whether this comment constituted "improper judicial intervention." <u>United States</u> v. <u>Rivera-Rodríguez</u>, 761 F.3d 105, 112 (1st Cir. 2014).

Pérez acknowledges that, to warrant vacating his convictions, he must have been prejudiced by the error. <u>See</u> <u>id.</u> at 111-12 (stating that "the defendant retains the burden of demonstrating" that the District Court's statement resulted in "serious prejudice" (citing <u>United States</u> v. <u>Ofray-Campos</u>, 534 F.3d 1, 33 (1st Cir. 2008))). But he fails to show that "there is

a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." Id. at 112 (citation modified).

Pérez relies chiefly on United States v. Raymundí-Hernández, 984 F.3d 127 (1st Cir. 2020) (per curiam), to support his attempt to show prejudice. There, we found that the district court's statements "created an appearance of anti-defense witness bias," id. at 157, because the district court, among other things, "tr[ied] to get [one of the defendant's witnesses] to concede that he had no first-hand knowledge" regarding pieces of his testimony, id. at 154, and "toy[ed] with" another one of the defendant's witnesses in a manner "aimed at discrediting" him, id. at 156.

Pérez contends that the District Court here similarly "bolstered the testimony of the only critical prosecution witness," Santamaría, and thus "tipped the scales in favor of the [government]." He, however, fails to cite to the specific testimony that the District Court supposedly bolstered, and we do not understand the District Court's statement to the jury to be "aimed at discrediting" a witness, as we concluded that the statements at issue in Raymundí-Hernández were. Id. at 156. Furthermore, to the extent Pérez is arguing that he was prejudiced by the District Court's intrusion on the "jurors' ability to evaluate competing testimony on their own," he does not cite to

any "competing" evidence that would support a contrary finding that all of Santamaría's payments to Pérez were made as campaign contributions. Pérez, therefore, has not shown that, "but for" the instruction, "the result of the proceeding would have been different." Rivera-Rodríguez, 761 F.3d at 112 (quoting United States v. Hebshie, 549 F.3d 30, 44 (1st Cir. 2008)).

## VI.

The next challenge that Pérez makes to his convictions concerns the District Court's failure to give an entrapment instruction to the jury. He acknowledges that he did not request such an instruction, but he contends that the District Court committed "plain error" in failing to do so. We are not persuaded.

To succeed under the plain error standard, "the party advancing the claim of error must establish '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" Lestage v. Coloplast Corp., 982 F.3d 37, 45 (1st Cir. 2020) (quoting Teixeira v. Town of Coventry ex rel. Przybyla, 882 F.3d 13, 18 (1st Cir. 2018)). Furthermore, "[w]here a defendant does not offer a particular instruction[] and does not rely on the theory of defense embodied in that instruction at trial, the district court's failure to offer

an instruction on that theory sua sponte is not plain error." United States v. Vasco, 564 F.3d 12, 20 (1st Cir. 2009) (first alteration in original) (quoting United States v. George, 448 F.3d 96, 100 (1st Cir. 2006)).

Despite Vasco, Pérez does not identify in his briefing to us where at trial he relied on an entrapment theory of defense. Thus, given his failure to request an entrapment instruction, we do not see how he has met his burden to show that the District Court committed "plain error" in not offering such an instruction sua sponte. See id.; see also United States v. Medina, 155 F.4th 11, 22 (1st Cir. 2025) (refusing to consider an entrapment defense first presented on appeal), cert. denied, No. 25-6203, 2026 WL 79673 (U.S. Jan. 12, 2026).

In any event, an entrapment defense has two prongs: "(1) improper government inducement and (2) the defendant's lack of predisposition to commit the offense charged." United States v. Pérez-Rodríguez, 13 F.4th 1, 17 (1st Cir. 2021) (citing United States v. Teleguz, 492 F.3d 80, 84 (1st Cir. 2007)). Improper inducement "occurs when law enforcement agents engage in conduct 'of the type that would cause a person not otherwise predisposed to commit a crime to do so.'" Id. (quoting United States v. Hinkel, 837 F.3d 111, 117 (1st Cir. 2016)). Lack of predisposition focuses "on whether the 'defendant was disposed to commit the criminal act prior to first being approached by

[g]overnment agents.'" Id. at 17-18 (quoting Jacobson v. United States, 503 U.S. 540, 549 (1992)).

To be entitled to a jury instruction of entrapment, Pérez must "meet[] a modest burden of production on the two prongs of the defense." Id. at 18 (citing United States v. Rodriguez, 858 F.2d 809, 814 (1st Cir. 1988)). We review whether the defendant met this burden by construing the evidence in the light most favorable to the defendant. Id. at 19 (citing Rodriguez, 858 F.2d at 813).

To show that he established the first prong of the entrapment defense, Pérez asserts that (a) the FBI "induced [him] into accepting a payment that he thought was a political campaign contribution" and (b) "Santamaría[] repeated[ly] insiste[d] on asking . . . Pérez about [a] waste transfer station contract" and "the status of payments" for other contracts. He does not explain, however, how Santamaría asking questions induced Pérez to take the bribes. Nor does he direct our attention to evidence that shows that the FBI "mixed bribes with . . . political campaign contributions" in order to induce him to accept the payments. In fact, in denying Pérez's motion for judgment of acquittal, the District Court noted that, for each of the payments in question, "Santamaría hand[ed] [Pérez] [a] white envelope with . . . $5,000" without "ever acknowledg[ing] that the hand-off [was] happening."

- 25 -

Pérez thus has not demonstrated that he met his burden as to the inducement prong. See id. at 17 ("An inducement consists of an opportunity plus something else -- typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." (citation modified)). He therefore has not shown that the District Court erred in not giving an entrapment instruction. See id. at 19 ("[A] court may deny an entrapment instruction based on a failure to show evidence on one prong or the other, without discussing both.").

## VII.

In his final challenge to his convictions, Pérez argues that his "right to an impartial jury was infringed" upon by the District Court when it (1) refused to continue the trial despite alleged pretrial publicity and (2) failed to adequately inquire into whether the jury had been exposed to prejudicial information after two members were recused. These arguments are difficult to untangle on appeal because Pérez does not provide record citations to support them. See Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority."). Nevertheless,

reading his brief to make two distinct challenges, we find neither persuasive.

### A.

By way of background, on February 6, 2023, Pérez filed a motion "regarding adverse pretrial publicity." He claimed in that motion that "the government caused the dissemination of photographs that served" to "prejudice" Pérez.

The photographs in question were submitted by the government on December 9, 2021, in a filing requesting that Pérez's bond be set to $50,000.[5] According to Pérez's February 2023 filing, those pictures were picked up by the press and "extensively disseminated" by newspaper, television, radio, and the internet. As a result, Pérez asked the District Court to "continue the case until" the prejudice dissipated. He also requested in a subsequent motion that the government be precluded from showing the photographs to the jury.

The District Court denied both requests. It determined that Pérez "fail[ed] to provide any context in which the[] photographs [were] used by the media" and thus failed to show why the photographs would be considered "sensational" rather than "merely factual." In so concluding, the District Court determined

---

[5] The photos, per the District Court, "depict two individuals exchanging a package[,] purportedly[] the monies provided to [Pérez] as related to the bribery charges."

- 27 -

that Pérez did not establish that the "photographs [were] inflammatory and prejudicial to an extent that his right to a fair trial would be in peril."

Jury selection took place on March 13, 2023. The District Court asked the prospective jurors whether they had "personal knowledge about the facts of [the] case." Two people responded that they did and that they had formed an opinion about the case. The District Court excused those jurors.

The District Court then asked whether any of the remaining prospective jurors had "read newspaper articles, seen news programs, podcasts or listened to radio programs where the guilt or innocence of [Pérez] [had] been discussed." Three individuals responded affirmatively. When questioned further at sidebar, all three stated that they understood there was a presumption of innocence and that they recognized that Pérez had to be judged based on the evidence presented at trial rather than that which was publicized. The District Court did not excuse any of them.

Two days after jury selection -- and so the day before the government was set to begin presenting its case -- Pérez provided documentation that two of the selected jury members had previously commented on social media about Pérez's arrest but had failed to disclose that fact during voir dire. Based on this information, Pérez requested that the District Court declare a

mistrial.  In the alternative, he sought disqualification of the two offending jury members and "strict voir dire" of the remaining jurors.

The next day, the District Court interviewed the two allegedly biased jurors and dismissed them.  The District Court then denied Pérez's request that an entirely new jury be empaneled and his alternative request that the remaining jury members be subject to "strict" questioning.

At the beginning of trial, the District Court asked the seated jury members whether there was any reason they felt they could not be "impartial, fair, and unbiased."  No one responded.

**B.**

We start with Pérez's contention that the District Court erred in denying his motion to "continue the trial . . . and to suppress the sensational images" because they and the news coverage surrounding them were prejudicial.  "[W]e review the District Court's denial of [Pérez's] continuance motion," United States v. Carbone, 110 F.4th 361, 372 (1st Cir. 2024), and decision "to admit or exclude evidence," United States v. Papantoniadis, 165 F.4th 65, 85 (1st Cir. 2026), for an abuse of discretion.  To succeed on this challenge, "[i]t is not enough" for Pérez to "simply . . . claim that the jurors were exposed to news accounts of the crime." United States v. Orlando-Figueroa, 229 F.3d 33, 43

(1st Cir. 2000). He "must show that the setting of the trial was inherently prejudicial." Id. (quoting United States v. Medina, 761 F.2d 12, 19 (1st Cir. 1985)). He has not done so.

Pérez appears to rest his challenge on the fact that the photographs "only present part of the evidence," but he does not explain why this necessarily means that the photographs were impermissibly prejudicial. See United States v. Symonevich, 688 F.3d 12, 23 (1st Cir. 2012) ("Evidence . . . is not unfairly prejudicial merely because it is harmful to the defendant."). We therefore do not see how the District Court could be said to have abused its discretion by declining his requests to continue the trial and exclude the images from the evidence. See Skilling v. United States, 561 U.S. 358, 386 (2010) ("When pretrial publicity is at issue, primary reliance on the judgment of the trial court makes especially good sense . . . ." (citation modified)).

## C.

That leaves Pérez's argument that the District Court abused its discretion during voir dire, see United States v. Zimny, 846 F.3d 458, 464 (1st Cir. 2017), when it failed to "adequately" "investigate" the remaining jurors for bias after two jurors were dismissed for their comments on social media concerning Pérez's case. This challenge, too, is meritless.

In United States v. Tsarnaev, the United States Supreme Court stated that, "[b]ecause conducting voir dire is committed to the district court's sound discretion, there is no blanket constitutional requirement that it must ask each prospective juror what he heard, read, or saw about a case in the media."  595 U.S. 302, 313 (2022).  Rather, the Court noted, a "district court's duty is to conduct a thorough jury-selection process that allows the judge to evaluate whether each prospective juror is 'to be believed when he says he has not formed an opinion about the case.'"  Id. (quoting Mu'Min v. Virginia, 500 U.S. 415, 425 (1991)).

The District Court did just that.  It asked the jurors whether there was any reason they felt they could not be "impartial, fair, and unbiased" and whether they had "read newspaper articles, seen news programs, [listened to] podcasts or listened to radio programs where the guilt or innocence of [Pérez] [had] been discussed."  Pérez does not provide any case law explaining why the questions asked were inadequate.

In addition, although two individuals were found to have failed to disclose a fact during voir dire, they were ultimately dismissed before trial "out of an abundance of caution." Therefore, we do not see how their presence alone, at least in light of the questions the District Court did ask, demonstrates that the District Court's jury-selection process was flawed.  Cf.

Skilling, 561 U.S. at 395 n.31 (holding that there was no deprivation of a constitutional right even though "voir dire did not weed out every [biased] juror" because the juror in question "did not sit on [the defendant's] jury").

## VIII.

Pérez's final set of challenges concerns his sentences. He argues that his sentences were procedurally unreasonable because the District Court erroneously calculated his sentencing range under the United States Sentencing Guidelines ("U.S.S.G.") by "appl[ying] . . . two enhancements that were not applicable." He also argues that his sentences were "substantively unreasonable because the [D]istrict [C]ourt did not consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct." (Citing 18 U.S.C. § 3553(a)(6).)

We review the District Court's factual findings for clear error and its interpretation of the U.S.S.G. de novo. United States v. Berroa, 856 F.3d 141, 162 (1st Cir. 2017). We review the substantive reasonableness of the sentences for abuse of discretion. United States v. Bruno-Campos, 978 F.3d 801, 808 (1st Cir. 2020).

**A.**

Before sentencing, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR") that, based on the Guidelines, recommended a sentencing range of sixty-three to seventy-eight months of imprisonment. In calculating his offense level under the Guidelines, the PSR included a two-level enhancement under U.S.S.G. § 2C1.1(b)(1) because it determined that "the offense involved more than one bribe or extortion." It also included a six-level enhancement under U.S.S.G. § 2B1.1(b)(1) because it determined that Pérez received between $40,000 and $95,000 in bribes.

Pérez objected to the PSR. He argued that the two-level enhancement under U.S.S.G. § 2C1.1(b)(1) should not apply because the evidence established only a single $70,000 bribe, which was paid out over a series of $5,000 "installments." Additionally, he argued that his enhancement under U.S.S.G. § 2B1.1(b)(1) should account for only "the three $5,000 FBI payments" because he "was not charged for [the] payments totaling $70,000 that corresponded to the political campaign" debt. Thus, he calculated, his enhancement under U.S.S.G. § 2B1.1(b)(1) should be two levels instead of six. In sum, he contended that his sentencing range under the U.S.S.G. should be thirty-three to forty-one months of imprisonment.

The District Court found neither objection convincing. First, it determined that the two-level enhancement under U.S.S.G § 2C1.1(b)(1) applied because "the payments [from Santamaría] were not made to influence a single action but rather multiple actions." In support of that finding, the District Court pointed to the fact that Santamaría was awarded not only the "original [road-construction] contract" but also benefited from subsequent amendments to that contract, was offered other contracts, and developed "a relationship [with Pérez] that matured as payments were being made."

The District Court then determined that a six-level enhancement under U.S.S.G. § 2B1.1(b)(1) was appropriate because, even if the $70,000 at issue were not considered, the evidence showed that Pérez received bribes totaling $65,000. See U.S. Sent'g Guidelines Manual § 2B1.1(b)(1)(D)-(E) (directing a six-level enhancement when the "loss" amount is between $40,000 and $95,000). To come to this figure, the District Court first "assumed," based on the evidence presented at trial, that Santamaría's payments to Pérez began on January 1, 2019. Then, relying on Santamaría's testimony that he made a $5,000 payment to Pérez "every four to five weeks," it calculated that Santamaría "paid in full" the $70,000 to Pérez by May 3, 2020, and that Santamaría subsequently made "approximately" thirteen $5,000 payments to Pérez between then and August 19, 2021 (the day

Santamaría gave his last payment to Pérez).  The total sum, it therefore found, amounted to $65,000.

The District Court ultimately concluded that the appropriate sentencing range under the U.S.S.G. was fifty-one to sixty-three months of imprisonment.

Finally, the District Court turned to the 18 U.S.C. § 3553(a) sentencing factors.  It referenced, among other things, Pérez's argument concerning "the need to avoid unwarranted sentence disparities" and his corresponding evidence that "bribery offenders were sentenced to 23 months" of imprisonment on average nationwide and that district courts "varie[d] downwardly at sentencing in almost 46 percent of the cases."

The District Court observed, however, that the proffered evidence did not differentiate sentences that "were imposed after a plea agreement" from those imposed after trial and that the evidence did not account for the fact that "47.1 percent of those sentenced" had "substantial[ly] cooperat[ed]."  Instead, the District Court found that when "defendants who receive[d] a downward departure because of substantial assistance" were excluded, the "Sentencing Commission's statistics" indicated that they received an average sentence of fifty-six months of imprisonment.

In the end, and "regardless of the Sentencing Commission's statistics," the District Court determined that the

appropriate sentences based on "the facts of the case" were sixty months of imprisonment for count one and sixty-three months of imprisonment for each of counts two and three.

## B.

Pérez maintains that the District Court should not have applied a two-level enhancement under U.S.S.G. § 2C1.1(b)(1) because he only received one payment -- even if it was in several installments. In support, he relies on a comment in U.S.S.G. § 2C1.1(b)(1) that states: "Related payments that, in essence, constitute a single incident of bribery or extortion (e.g., a number of installment payments for a single action) are to be treated as a single bribe or extortion." U.S. Sent'g Guidelines Manual § 2C1.1(b)(1) cmt. n.2.

The argument, however, is advanced in conclusory fashion, with solely the comment discussed above offered as support. Moreover, Pérez makes no effort to engage with the comment's text that describes "installment payments" as "a single incident of bribery" when they are made "for a single action." Id. (emphasis added); see United States v. Arshad, 239 F.3d 276, 280-81 (2d Cir. 2001). He also does not confront the District Court's conclusion that "the payments were not made to influence a single action but rather multiple actions." We thus find this

- 36 -

argument waived for lack of development.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Pérez's challenge to the District Court's application of § 2B1.1(b)(1) is similarly brief.  The entirety of his argument on this front reads as follows: "[T]he [D]istrict [C]ourt applied a higher level for the amount by including the political campaign contribution payments that came before the FBI payments."  However, as recounted above, the District Court excluded the payments that Pérez contends constitute "political campaign contributions" when it made its calculations.  Therefore, we do not see how the District Court clearly erred in finding that the payments made to Pérez were between $40,000 and $95,000.  See U.S. Sent'g Guidelines Manual § 2B1.1(b)(1)(D)-(E).

Finally, Pérez argues that the disparity between his sentences and other similarly situated defendants' sentences renders his sentences "substantively unreasonable."  To support this claim, he reiterates the statistical data he presented to the District Court and cites to three cases in which he alleges similar defendants were sentenced to terms of imprisonment "between twenty-four and thirty months."

The District Court did not abuse its discretion in rejecting the proffered statistics given that the data does not differentiate between defendants who pleaded guilty and those who, like Pérez, did not.  See United States v. Rodríguez-Lozada, 558

F.3d 29, 45 (1st Cir. 2009) ("Given the material difference between the defendants who pled guilty pursuant to plea agreements and [the defendant] who did not, no disparity in sentencing occurred in this case that would amount to an abuse of discretion."). And similarly, the three cited cases also do not help Pérez because the defendants in them were sentenced after they had pleaded guilty to the charged offenses. See McDonough, 727 F.3d at 165-66. Therefore, because Pérez has not put forth "appropriate comparators, [his] disparity challenge cannot proceed." United States v. González-Barbosa, 920 F.3d 125, 131 (1st Cir. 2019).

## IX.

For the foregoing reasons, Pérez's convictions and sentences are **affirmed**.